[Civ. No. 37283. Second Dist., Div. Three. Aug. 26, 1971.]

VERA C. WEISZ, Plaintiff, Cross-defendant and Appellant, v. ALEXANDER Z. WEISZ, Defendant, Cross-complainant and Respondent.

## Counsel

Cutler & Cutler and Richard B. Cutler for Plaintiff, Cross-defendant and Appellant.

Fain & Lavine and Harry M. Fain for Defendant, Cross-complainant and Respondent.

## Opinion

**ALLPORT, J.**—In February 1962 plaintiff and cross-defendant Vera C. Weisz, hereinafter referred to as wife, and defendant and cross-complainant Alexander Z. Weisz, hereinafter referred to as husband, entered into a written agreement purporting to settle and dispose of their property rights as well as their respective rights and obligations for wife's support and maintenance and child support. The agreement was made in Massachusetts. Paragraph 6 provided that in the event of divorce husband shall pay wife $291.50 per month for her support and maintenance (alimony) plus a fixed percentage of certain adjusted gross income. All such payments were to continue until death of husband or wife or remarriage of wife, which-

ever came first. Paragraph 7 made somewhat similar provisions for the support of the two minor children of the parties, Russell and Laurie. The provision for the children's support was to terminate upon their reaching the age of 21 or upon completion of a college education. The agreement also provided as follows: "The Wife agrees to accept the provisions herein made for her in lieu of any and all claims for past, present and future maintenance, support or alimony in the event that either party obtains a divorce. . . . On matters affecting the construction, performance, and interpretation of this agreement, the rights and obligations of the parties hereto shall be governed exclusively by the laws of the Commonwealth of Massachusetts. . . . It is understood and agreed between the parties hereto that no decree of any court entered in a separation or divorce proceeding brought by either the Husband or the Wife against the other shall in any way affect the validity of this agreement, which shall be binding upon the parties irrespective of any such decree." In March of 1962 husband obtained a final decree of divorce in Alabama. This decree provided that the separation agreement of February 1962 "with reference to the custody and maintenance of the minor children, and with reference to the property rights existing between the parties, be and the same is hereby ratified, confirmed, approved and incorporated in this Decree of Divorce by reference and shall survive and not merge herein and the parties hereto are ordered to strictly abide thereby." Thereafter husband remarried and became a resident of California and obtained custody of the two children. In 1967 cross-actions were filed in California whereby wife sought a declaration of rights under the agreement and husband sought to establish the Alabama decree as a foreign judgment of divorce and merge and incorporate therein his obligations with respect to alimony and child support to the date of the judgment. Husband also sought to have the alimony terminated, the custody of Russell awarded to him, the obligation to pay wife for Russell's support terminated and a reasonable amount determined to be paid to wife for the support of Laurie.

Following trial the court found, and we agree, that the Alabama decree did not merge husband's alimony obligations and further found as follows:

"5. Subsequent to March 16, 1962, Defendant remarried and established permanent residence in the County of Los Angeles, State of California. Since the rendition of said divorce decree on March 15, 1962, the condition and circumstances surrounding the parties materially changed in that said minor son, RUSSELL WEISZ, has been in the physical and de facto custody of Defendant since on or about July 1966, and since on or about July 1, 1968 the minor daughter of the parties, LAURIE WEISZ, has likewise been in the physical custody of Defendant. The cost of support for Defendant, his wife and two minor children, requires all or more of

Defendant's earnings or income, including the earnings of his wife. Since March 15, 1962, Plaintiff has been continuously employed, is self-supporting, and has earned gross income as follows:

For the calendar year 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . $ 5,800.00

For the calendar year 1965 . . . . . . . . . . . . . . . . . . . . . . . . . . $ 9,385.00

For the calendar year 1966 . . . . . . . . . . . . . . . . . . . . . . . . . . $15,983.60

For the calendar year 1967 . . . . . . . . . . . . . . . . . . . . . . . . . . $ 9,163.50

Plaintiff's gross salary is $666.74 per month, and has no person dependent upon her for support.

"The Court also finds, based on Plaintiff's Answers to Interrogatories, that she is the owner and possessed of capital assets, including cash, stocks, bonds, securities and personal property of a value in excess of $15,000.00.

"6. The duration of the marriage of the parties (calculated between date of marriage and separation) was approximately eight (8) years. Defendant has paid or incurred indebtedness for alimony since February 26, 1962. By reason of the foregoing Findings of Fact, Paragraph 5 and Paragraph 6 hereof, the Court finds that it is just and reasonable that alimony be terminated.

"7. The Court finds that it possesses jurisdiction to terminate alimony in accordance with its findings above set forth."

A judgment was entered establishing the Alabama decree as a foreign judgment of divorce, terminating wife's alimony, awarding custody of the minors to husband and suspending provisions for their support while in his custody. Wife appeals from that portion of the judgment terminating the alimony payable to her under the agreement and the Alabama decree of divorce. There is no claim of insufficiency of the evidence to support the findings of fact.

Wife contends on appeal that the contract provision for the payment of alimony is not subject to modification by its terms or under Massachusetts law and that Massachusetts law must be applied by the California court since the agreement was made in Massachusetts by residents of that state and that the contract itself so provides. Husband contends that despite the contractual provisions to the contrary the alimony was subject to termination under both Massachusetts and California law. He argues that the court, under the law of either state, has the inherent power to sever the contractual provision for alimony from the balance of the agreement and to make its own original determination as to the pay-

ment of alimony or, that even though incorporated by reference in a previous alimony award, to modify the decree pertaining thereto without regard for the agreement of the parties since any agreement purporting to deprive the court of this power is void as being contra to public policy. It is conceded by both husband and wife that the California court had jurisdiction over the subject matter. This is illustrated by the fact that both parties invoked the jurisdictional power of that court in the first instance and no appeal has been taken from the whole of the judgment.

At the outset it becomes desirable to place the controversy in its proper perspective. The Alabama court granted husband a final decree of divorce referring to but two portions of the separation agreement, to wit, "the custody and maintenance of the minor children," and "to the property rights existing between the parties." No mention is made of that portion of the agreement pertaining to wife's right to future support and maintenance and of her right to alimony in the event of a subsequent divorce. The property rights were the subject of other provisions of the agreement. Thus, as suggested by husband, the California court was involved in an *ab initio* determination of his alimony obligations but not by way of decree or modification of a decree since no such order was involved in the Alabama decree. Wife does not seek support by invoking the inherent power of the court to provide such in an appropriate case, no doubt recognizing the futility of so doing in light of the evidence pertaining to her need and her husband's ability to pay as reflected by the findings of the trial court. She seeks to have the California court enforce her alimony rights under paragraph 6 of the agreement in her declaratory relief action.

We do not think it necessary to consider the Massachusetts law. There is no problem of construction, performance or interpretation of the agreement. The document is completely understandable on its face. Assuming, but not deciding that, the contractual provision for alimony is valid and enforceable in Massachusetts, we still must determine the validity and enforceability of such a provision under California law since the parties have selected California as the forum for settlement of their dispute. "In accordance with the general rule discussed supra § 16 e, against the enforcement of contracts which, although valid where made, are against the public policy of the forum, a property settlement contract made by a husband and wife in violation of the public policy of the state in which enforcement is sought, will not be enforced, even though it is valid and enforceable in the state in which the contract was made." (17 C.J.S., § 235, p. 1105.) In this state it has been held that where the provisions of an agreement for alimony are incorporated (merged) in the decree and that decree orders performance of such provisions, enforce-

ment can only be had under the decree and not by independent action on the agreement, (*Hough* v. *Hough*, 26 Cal.2d 605, 614 [160 P.2d 15]; *Lazar* v. *Superior Court*, 16 Cal.2d 617, 620 [107 P.2d 249]; *Dunning* v. *Dunning*, 114 Cal.App.2d 110, 113 [249 P.2d 609]; *Shogren* v. *Superior Court*, 93 Cal.App.2d 356, 358 [209 P.2d 108].) ■ There being no merger in the instant case wife is not prevented from pursuing her rights to support under the agreement. (*Dunning* v. *Dunning, supra,* at p. 114.) ■ Ordinarily the courts of this state, under the rule of comity, will give effect to the laws of a foreign jurisdiction and a mere variance between that law and the law of the forum does not alone warrant denial of the enforcement of rights created under the laws of another state. (*Biewend* v. *Biewend*, 17 Cal.2d 108, 113-114 [109 P.2d 701, 132 A.L.R. 1264].) This principle however requires that the enforcement of the right obtained under the laws of another state would not be prejudicial to recognized standards of morality and to the general interests of the citizens in the state of the forum. (*Biewend* v. *Biewend, supra,* at p. 113.) ■ As was said in *Reich* v. *Purcell*, 67 Cal.2d 551 at page 553 [63 Cal.Rptr. 31, 432 P.2d 727]: "In a complex situation involving multi-state contacts, however, no single state alone can be deemed to create exclusively governing rights. (*Crider* v. *Zurich Ins. Co.*, 380 U.S. 39, 42 [13 L.Ed.2d 641, 643, 85 S.Ct. 769]; *Clay* v. *Sun Ins. Office, Ltd.*, 377 U.S. 179, 181-182 [12 L.Ed.2d 229, 231, 84 S.Ct. 1197]; *Watson* v. *Employers Liab. Corp.*, 348 U.S. 66, 72-73 [99 L.Ed. 74, 81-82, 75 S.Ct. 166].) The forum must search to find the proper law to apply based upon the interests of the litigants and the involved states."

■ In this state the Legislature has given the court the power to provide for support and maintenance and to modify or revoke such orders as deemed necessary. (Civ. Code, § 139, Am.Stats. 1967.) In *Dunning* v. *Dunning, supra,* 114 Cal.App.2d 110, 114, the court said:

"Whatever may be said of the efficacy of such a waiver so far as agreements between husband and wife regarding property and property rights are concerned, we are satisfied that any such agreement between the parties attempting to limit the power of the court over alimony and child support (Civ. Code, § 139) would contravene public policy and cannot be upheld. As was said by our Supreme Court in *Hough* v. *Hough, supra,* page 612, 'The settlement of property rights should be final in order to secure stability of titles. Support allowances, on the other hand, should be subject to the discretion of the court as justice may require. It may well be reasoned that the provisions of section 139 of the Civil Code authorizing the modification of support allowances becomes an implied part of the agreement when it is incorporated into the decree.'

"The obligation to pay alimony is a continuing one, subject at all times to the scrutiny of the courts as to fairness and adequacy from the beginning, and the contract of the parties cannot be permitted to deprive the court of power which it otherwise possesses."

It is true in *Dunning,* and *Hough* cited therein, the courts were dealing with the situation where the agreement was incorporated or merged into the decree awarding alimony thus rendering the agreement itself unenforceable independent of the decree. However, we see no reason why, in an action seeking a declaration of rights under the agreement where no previous order for alimony exists, the same principle of public policy should not apply. When the right to receive support and maintenance or the need to be relieved from the payment for such is presented to the court in a pending divorce action or in an action on an agreement for such, the same considerations of public policy become involved. Since the state of California has a vital interest in the economic and social welfare of its citizens, including husband, the courts of this state should not be deprived of their inherent power over alimony even though provided for by contract of the parties. The contract is but one of the factors to be considered by the court, along with the elements of need for, and ability to pay, usually deemed controlling of the issue. In *Hough* v. *Hough, supra,* it was said at pages 610-611:

"True, the basis for an alimony award arises out of the law imposed obligation of support rather than contract, but where the parties agree to a specified amount and the agreement is presented to the court, it becomes a part of the issues litigated. One of the precise issues involved in the divorce action is whether or not support payments should be ordered and if so the amount thereof. The agreement deals with identical questions. . . .

"The retained power of the court to modify the decree upon a showing of changed circumstances (Civ. Code, § 139) which is based upon sound policy would be seriously impaired, and any attempt on its part to give relief thereunder would be abortive if the parties could still enforce the agreement which had been made a part of the decree. True, an action on the contract would not carry with it the contempt method of enforcement, but the end result would be that a matter in which the state has a vital interest, the support allowance, would be outside the policy declared by the state. No such anomalous situation should be permitted to exist. It is aptly said in 39 Michigan Law Review 128:

" 'It is conceived that the basic questions in regard to the power of a court to modify decrees for alimony which are based upon a contract cannot be solved by definition, and it is thought that the solution should lie in an evaluation of the ends which will be accomplished by the various theories

and their social desirability. . . . The obligation to pay alimony or support money to a divorced wife is one peculiarly justified by considerations of social desirability and generally prescribed as a consequence to dissolution of the marital relation. Being a continuing obligation, and being subject to scrutiny of the courts as to fairness and adequacy at its inception, it should so remain and the contract of the parties should not be allowed to oust the court of power otherwise exercisable. . . .' "

It follows that, even though the law of Massachusetts might permit a wife's enforcement of paragraph 6 of the agreement, the court in the instant case, having determined that she did not have need for the support and that husband did not have the ability to pay such, was not bound by this provision of the agreement. To require payment of alimony under such circumstances would be contrary to principles of equity, fairness and justice and would therefore be contrary to the public policy of this state.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.