[L.A. No. 30083. In Bank. July 16, 1975.]

NELL GILES KNODEL, Plaintiff and Respondent, v.
WALTER JAMES KNODEL, Defendant and Appellant.

## COUNSEL

Richard S. Henderson for Defendant and Appellant.

Smith, Shifflet & Sharp and Philip D. Sharp, Jr., for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Walter James Knodel appeals from a judgment making an award to Nell Giles Knodel of a sum representing arrearages for unpaid spousal support and denying his motion to terminate such support or, in the alternative, to modify provisions therefor. A preliminary question to be resolved is whether Walter's appeal is timely. We conclude that it is but that on the merits Walter is not entitled to relief from his obligation for spousal support.

Walter and Nell were married in the State of Virginia in 1964. They experienced marital difficulties while residing in that state and entered into an agreement "relating to the amount that Husband shall pay to Wife as alimony and the property rights of the parties."[1] The agreement

---

[1] The agreement provides, inter alia, that the sum of $200 per month be paid Nell "as alimony" for a five-year period and that thereafter Nell be paid $100 per month. The payments were to cease upon Nell's death or remarriage. The agreement also provided that certain of Nell's medical expenses be paid by Walter, or that she be reimbursed from the proceeds of Walter's medical and hospitalization insurance.

recites that it is to be governed by the laws of the State of Virginia and that in the event of a divorce the decree was to contain no provision for support or property rights "as the provisions contained herein are in lieu thereof." It is also provided in the agreement that it "shall survive and shall not become merged in any final decree of divorce between the parties."

In 1968 Walter obtained in Virginia a divorce from Nell on the ground of her desertion. The decree recited that the agreement for spousal support was "ratified, confirmed and approved" but contained no express provision for property rights or spousal support nor did it purport to merge the agreement.[2]

. Walter moved to California after the divorce. In 1970 Nell commenced an action for breach of contract against Walter in the municipal court in California seeking the sum of $901.52 for medical expenses claimed to be due under the Virginia agreement. Walter answered and cross-complained seeking, inter alia, the transfer of the cause to the superior court, the establishment in that court of the Virginia decree as a foreign judgment, and the modification of the foreign judgment to eliminate any requirement therein that he pay money to Nell as "alimony or support in lieu of alimony." Nell answered the cross-complaint, admitting Walter's allegation of the Virginia divorce decree.

On November 25, 1970, upon motion by Walter therefor, an order was made in the municipal court transferring the cause to the superior court. On January 27, 1971, in the latter court it was ordered upon stipulation of the parties that the Virginia decree "is hereby established as a foreign judgment . . . in full force and effect." The court also issued on January 27 an order directing Nell to show cause why the relief sought by Walter, that is the elimination or modification of provisions for spousal support, should not be granted.[3] On February 4, Nell filed a memorandum of

---

[2]Walter and Nell were respectively of the ages of 54 and 51 years at the time of their marriage and there was no issue of the marriage. Each had been previously married.

[3]A copy of the order to show cause is not included in the clerk's transcript on appeal. We take judicial notice, however, of the order and of other matters of record in the trial court. (Evid. Code, § 452, subd. (d).) The declaration in support of the order alleged, in addition to other matters some of which have heretofore been recited, that the marriage had lasted but 23 months prior to separation; that at the time of the separation Nell had a net worth of approximately $90,000 while Walter was insolvent; that Walter had paid Nell over $19,000 under the Virginia agreement; that Walter supported three daughters of a prior marriage; that Walter supported his present wife who had developed a "severe coronary condition"; that Walter had not been made aware, at the time of the

points and authorities in response to the order to show cause.[4] On February 17 Walter filed a memorandum of points and authorities intended to refute Nell's contention that under the Virginia decisions, and hence under the California law (see *Avery* v. *Avery, supra,* 10 Cal.App.3d 525, 532), a California court could not make an order relating to alimony which was inconsistent with the agreement of the parties.[5]

On April 6 after oral argument the court ordered that the relief prayed for by Walter for termination of spousal support be denied. The reasons for the denial do not appear. We may assume, however, based on the materials submitted in opposition to the motion, that the court concluded that the provisions set out in the agreement for support could not be modified. The only arguments advanced on appeal relate to that ground for denial.[6]

---

agreement, that under Virginia law alimony could not be awarded a guilty spouse and that an agreement for spousal support was non-modifiable in the event of changed circumstances. It also appears, by an addendum to the declaration, that Walter was put on a part-time work schedule by his employer, and that his monthly income was substantially less than his monthly expenses (approximately $1,211 income against $1,657 expenses). Nell's income was alleged to be, at the time of the separation. "$10,000 yearly earnings, more or less," not including income from investments, and it was alleged that she would be eligible for both federal civil service and social security retirement benefits.

[4]Nell urged therein that a divorce decree of a sister state not modifiable in that state, cannot be modified in the courts of this state (see *Avery* v. *Avery* (1970) 10 Cal.App.3d 525, 532 [89 Cal.Rptr. 195]); that by statute an award of alimony in Virginia is not modifiable when the spouses have by agreement provided for spousal support in which event an order for alimony can be made only "in accordance with that stipulation or contract" (Va. Code, § 20-109; *McLoughlin* v. *McLoughlin* (1970) 211 Va. 365 [177 S.E.2d 781]; *Dienhart* v. *Dienhart* (1969) 210 Va. 101 [168 S.E.2d 279]); that as a proper court in Virginia could not, on motion for modification of spousal support provided by agreement, make an order for alimony inconsistent with that agreement, the California court likewise could not entertain such a motion. No attempt was made to refute Walter's allegations tending to establish the changed circumstances which he claimed warranted a modification.

[5]Walter urged that *Dienhart* and *McLoughlin,* which construe and apply Virginia Code section 20-109 (see fn. 4, *supra*), are distinguishable on the ground that a decree approving a contract for payments in lieu of alimony is not a decree "for the payment of alimony" (*Martin* v. *Martin* (1964) 205 Va. 181 [135 S.E.2d 815]); and that as section 20-109 deals only with decree's providing for alimony, it has no application in this case. Walter also argued that as the decree for divorce was awarded him on a finding of Nell's desertion, she could not have been awarded alimony and, in such circumstances, a contractual provision for spousal support in lieu of alimony could be terminated for cause (see *Gloth* v. *Gloth* (1930) 154 Va. 511 [153 S.E. 879, 71 A.L.R. 700]). *Gloth* was distinguished by the Virginia Supreme Court in *Dienhart* on the ground that it was decided on a statute not comparable to Virginia Code section 20-109.

[6]The record does not include transcripts of any of the proceedings before the court although it otherwise appears that the issues were extensively argued. The parties have

Also on April 6 the court made an order directing Walter to show cause why he should not cure arrearages in spousal support payments[7] and why he should not pay the $901.52 medical expenses claimed by Nell to be due under the Virginia agreement.

On April 14, prior to the time the court had ruled on those matters still pending before it, Walter filed a notice of motion for reconsideration of the April 6 order denying his motion for modification of the spousal support provisions. He sought in the alternative "that so much of the Virginia decree as was established as a judgment of this court be vacated insofar as the provisions therein relating to alimony or support in lieu of alimony are concerned." The notice was supported by a memorandum of points and authorities pursuant to which Walter sought to establish that if Virginia law was construed to deny him the right to modify alimony payments in the circumstances of this case, the denial was unconstitutional and that, aside from the unconstitutional application of the Virginia law, the support provisions were modifiable. Walter also obtained from the court on April 16 an ex parte order shortening time for hearing the motion for reconsideration. In the declaration in support of the order signed by the court, it is recited that Walter proposed to appeal from the court's "indication that it lacks jurisdiction to modify on constitutional grounds" the spousal support provision; that it was necessary if Walter was to preserve the constitutional issues on appeal that they be raised before the trial court; and that in the interest of conserving the court's and counsels' time the motion should be heard and the time for hearing thereof should be shortened.

On April 26, after oral argument, the court made a "Partial Order" whereby it required Walter to pay the sum of $901.52 to Nell for medical expenses provided for in the 1967 agreement, and it continued to May 6 Nell's motion for an award of the arrearages of spousal support payments under the agreement.

On April 28 Nell filed an extensive memorandum of points and authorities in which she argued the merits of her claim for spousal

entered into a stipulation that the appeal may be decided upon the record on appeal and Walter's opening brief. We are compelled, accordingly, to examine the record on appeal including filings in the trial court in order to ascertain the parties' respective positions.

[7]The arrearages for which Nell sought payment were for the period commencing with the filing by Walter of the cross-complaint wherein he sought the elimination of the support provisions. The total amount of the claimed default, at the time of the order to show cause, was $1,000 for the months November 1970 through March 1971.

support under the provisions of the agreement. Therein she addressed arguments in opposition to Walter's interrelated claim set out in his motion for reconsideration noticed on April 14 that the Virginia law as applied in the circumstances of this case was unconstitutional.[8]

On June 25 the court after oral argument made an "Order and Judgment," requiring Walter to pay the spousal support arrearages, and also ordered that his "Motion for Reconsideration re Termination of Spousal Support" be denied. On June 30 Walter filed a notice of appeal "from the order made . . . on June 25" which, according to the notice of appeal, denied Walter's motions to terminate spousal support or, in the alternative, vacate those provisions in the decree of divorce.[9]

### The Appealability of the Order of June 30

If we deem Walter's appeal to be from the April 6 order denying his motion for modification of the provisions for spousal support (which would be consistent with the express recitations of his notice) and if that order was appealable the notice was not timely filed as more than 60 days had elapsed since April 8, the date upon which a notice of entry of judgment had been mailed by the court. (Cal. Rules of Court, rules 2(a), 2(b).) ■ If, however, we consider Walter to have appealed from the order of June 30, which is the order he is deemed to make reference to in

---

[8]It is stated in the text of Nell's memorandum of points and authorities that the court had not ruled on Nell's motion for an award of arrearages of spousal support payments because Walter "had filed his [notice of] Motion for Reconsideration of the Court's previous ruling re termination of spousal support," and that the court had for that reason continued the hearing on Nell's motion "until the Motion for Reconsideration could be heard."

[9]It appears that Walter's appeal purports to be taken from a minute order from the bench announcing the court's decision following oral argument on June 25. A formal "order" was signed and filed by the court on June 30, and entered on July 1. In any event reference in the notice of appeal to the "order made . . . on June 25" is taken to mean the formal order of June 30. (Cal. Rules of Court, rule 1(a); *Estate of Coburn* (1971) 20 Cal.App.3d 368 [97 Cal.Rptr. 597].) The notice of appeal is treated as having been filed on July 1. (Cal. Rules of Court, rule 2(c).)

We note that the notice of appeal describes the "order" of June 30 as denying Walter's initial motion for termination of spousal support, which motion had previously been denied by the court on April 6, rather than as denying the motion for reconsideration as expressly provided in the "order" of June 30. The pertinent text of the notice of appeal is as follows: "Walter James Knodel, respondent, appeals . . . from the order made in the above entitled matter on June 25, 1971 denying respondent's Motion to Terminate Spousal Support or in the Alternative to Vacate All such Provisions in the Foreign Judgment of Divorce. . . ."

There is no challenge to the award of the sum of $901.52 to Nell for certain medical expenses.

his notice (see fn. 9, *supra*), then a serious question is raised whether an appeal lies from an order denying a motion for reconsideration of a previous order (Code Civ. Proc., § 904.1), if in fact that is one of the legal consequences of the order of June 30. (See *Estate of Richards* (1941) 17 Cal.2d 259, 267 [109 P.2d 923].) The view we take of the entire course of proceedings, however, persuades us for the reasons which are next discussed that all orders prior to the June 30 order were interlocutory in nature and were thus not appealable until the final judgment of June 30. The notice of appeal from the judgment denying the relief sought by Walter was thus timely filed.

■ The right of appeal is limited to appeals from "judgments" which do not include interlocutory judgments except in particular instances not here pertinent. (Code Civ. Proc., § 904.1, subds. (a), (h), (i) and (j).) The reason for the one judgment rule is that "piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and . . . a review of intermediate rulings should await the final disposition of the case. [Citations.]" (6 Witkin, Cal. Procedure (2d ed.) pp. 4050-4051.)

■ It is clear in the instant case that the court had before it a number of issues presented for resolution, some of which were interdependent, and all of which related to the applicability and validity of the agreement executed in Virginia and its significance, if any, as a part of the divorce decree granted in that state. Nell first sought particular damages for breach of the agreement. Walter sought as affirmative relief, first, the transfer of the cause from the municipal to the superior court. Thereafter he sought the establishment of the decree as a foreign judgment and the elimination or modification of the support provisions contained therein.[10] The cause was so transferred by a municipal court order and no challenge has been made to that order. The initial order made in the superior court, other than an order to show cause, was made

[10]There was, in fact, no legal reason for establishing the Virginia decree as a foreign judgment. "Upon the basis of comity . . . the California courts have in numerous cases ordered that a foreign decree for future payments of alimony be established as the decree of the California court with the same force and effect as if it had been entered in this state, including punishment for contempt if the defendant fails to comply." (*Biewend* v. *Biewend* (1941) 17 Cal.2d 108, 113 [109 P.2d 701, 132 A.L.R. 1264].) Although the establishment of such a decree may be necessary to arm a California court with the tools necessary to enforce a decree in a proper case, the Virginia decree in the instant case was not of that nature. The decree makes *no* provision for spousal support and neither party actually seeks to enforce it or to modify it in any manner. Spousal support is required, if at all, only because of the provisions of the Virginia agreement. The legal effect of that agreement could have been litigated and determined independently of the legal effect of the foreign decree.

pursuant to stipulation on January 27 establishing the decree as a foreign judgment. ■ ■■■ That order was clearly intended to be interlocutory as there were still pending before the court Nell's claim for damages for breach of contract and Walter's claim for termination of spousal support provisions.[11] In fact, none of the real disputes between the parties had been resolved as of that time.

■ The next order made by the court, other than another order to show cause, was that of April 6 wherein the relief prayed for by Walter for termination of spousal support was denied. However, on the very day that it rejected Walter's contentions the court also ordered him to show cause why he should not be required to cure arrearages for payment of spousal support which Walter had discontinued when he first sought the court's intervention. The legal issues raised by the affirmative relief sought by him and by his defense for nonpayment are the same—the claimed invalidity of the support provisions set out in the agreement. Certainly neither the court nor the parties contemplated on April 6 that the issue of the validity of the support provisions had been finally resolved. Not only was that issue still before the court but there also remained for consideration and judicial action the question of Nell's claim for medical expenses. There was thus something "further in the nature of judicial action . . . essential to a final determination of the rights of the parties" (*Lyon* v. *Goss, supra,* 19 Cal.2d 659, 670), and the order of April 6, designated by the court as an "order," was thus interlocutory in nature.[12]

---

[11]"As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." (*Lyon* v. *Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11]; see also *Bakewell* v. *Bakewell* (1942) 21 Cal.2d 224, 227 [130 P.2d 975].)

[12]Events which followed the order of April 6 lend further support to the conclusion that the order was interlocutory in nature. Thus, on April 14 Walter filed a notice of motion for reconsideration arguing, for the first time in any document of record, the invalidity of spousal support provisions on constitutional grounds. He obtained, on April 16, an ex parte order shortening time for the hearing of the motion, and it is recited in the incorporated declaration for the order that Walter proposed to appeal from the court's "indication" that it could not modify the support provisions and that it was necessary that the constitutional issue be raised in the trial court. Also in Nell's memorandum of points and authorities in opposition to Walter's motion she stated that the court had by design delayed a final determination of her right to spousal support until it could consider the merits of the constitutional arguments advanced by Walter. (See fn. 8, *ante.*)

We are not aided in our determinations herein by an examination of the record for findings of fact which may be indicative of the interlocutory or final nature of any order. Written findings were not made as to any of the orders herein but the record does not

The next order made by the court, aside from ex parte orders which on their face are interlocutory in nature, was the order of April 26 which is designated a "Partial Order," awarding Nell the claimed medical costs. This order is clearly interlocutory, as it even provided for a date for hearing another matter then pending before the court, Nell's right to spousal support on installments which were past due.

The judgment of June 30 (see fn. 9, *ante*) is therefore the final dispositive order made by the court. It is designated an "Order and Judgment" and it disposes of the two interrelated matters remaining before the court, the same being Nell's right to payment of the accrued spousal support installments and the motion for reconsideration of the issue of the validity of the support provision on constitutional grounds. Walter's notice of appeal was timely filed when measured against the June 30 judgment. (See fn. 9, *ante.*)

Although there are exceptions to the rule which precludes appeals from interlocutory orders, none here is applicable. (See 6 Witkin, Cal. Procedure (2d ed.) pp. 4052-4069.)[13] The order of April 6 being interlocutory in nature, no appeal could be taken therefrom until the judgment of June 30. Although Walter's notice of appeal is not explicit as to the precise order or orders from which he appeals there is no confusion as to the determinations which Walter challenges on appeal and no prejudice appears. We adhere to the rule that doubtful cases should be resolved in favor of the right to appeal where a substantial interest is affected. (Cal. Rules of Court, rule 1(a); *Santa Barbara etc. Agency* v. *All Persons* (1957) 47 Cal.2d 699, 715 [306 P.2d 875].)

### *Finality of Contractual Provisions For Spousal Support*

The contractual provisions for spousal support at the time of the divorce decree in Virginia were not subject to modification under the prevailing statute as construed by the high court in that state. In *Dienhart* v. *Dienhart, supra,* 210 Va. 101, the Virginia Supreme Court of Appeals

---

disclose any request for findings after announcement of an intended decision and, when not requested, the court is not required to make written findings of fact and conclusions of law. (Code Civ. Proc., § 632.)

[13]The fact that claims remaining unresolved following a particular order were placed in issue pursuant to a cross-complaint does not give rise to an exception to the one-judgment rule except perhaps where the parties to the action and cross-action are not identical. (See *Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 303 [259 P.2d 901].) Here the parties were not only identical but issues raised by each party by their respective pleadings remained unresolved until the judgment of June 30.

held that Virginia Code section 20-109 precluded in a divorce action an award of alimony which was not *"in accordance with"* a *"stipulation or contract"* when *"signed by the party to whom such relief might otherwise be awarded"* and *"filed with the pleadings . . . unless such party raise objection thereto prior to the entry of the decree."* (*Id.,* at p. 101, fn. 1; see also *McLoughlin* v. *McLoughlin, supra,* 211 Va. 365.) Here the agreement signed by Walter and Nell was filed by him with his pleadings for divorce and he raised no objection thereto prior to entry of the decree which he sought. The agreement provides in clear terms for Nell's support by Walter. Thus Walter in the State of Virginia could not have succeeded in obtaining a modification or termination of the contractual support provision as any such relief would not have been "in accordance with" the agreement.[14]

Walter places great reliance on *Weisz* v. *Weisz* (1971) 19 Cal.App.3d 676 [97 Cal.Rptr. 18], a case decided while the appeal in the present case was pending. That case involved an agreement entered into in Massachusetts for support of a wife by a husband. The agreement provided, as in the instant case, that in the event of a divorce the decree would not alter the provisions for spousal support. The husband later obtained in Alabama a decree of divorce which expressly provided that the agreement was not merged. The husband became a California resident and, in 1967, cross-actions were commenced whereby the wife sought a declaration of rights and the husband sought, inter alia, to establish the Alabama decree as a foreign judgment and to terminate support provisions.

In affirming the judgment terminating support provisions, the Court of Appeal conceded the validity of the continuing contractual obligation for support, but held that notwithstanding the rules of comity such an agreement was nevertheless unenforceable in California as it was in

---

[14]Walter's arguments to the contrary under the Virginia law are without merit. His reliance on a case substantially distinguished in *Dienhart* (*Gloth* v. *Gloth, supra,* 154 Va. 511) is unavailing. He also urges that *Dienhart* and *McLoughlin* are not in point because Virginia Code section 20-109 is applicable only to those cases wherein a decree has expressly provided for alimony, and the Virginia decree in the instant case does not purport to make any express provisions for alimony. Such argument would have foreclosed application of the statute in *Dienhart* and *McLoughlin,* as well as to the facts of the instant case. The Virginia decree makes no express provision for alimony, and only ratifies, confirms and approves the agreement. However, it is not the decree of divorce in the instant case which raises any problem as that decree complies with Virginia Code section 20-109 by not making any provision for support inconsistent with the agreement. The Virginia statute would be applicable to preclude any *future* judicial act making provision inconsistent with the agreement, and it is for this reason that the relief sought by Walter is not available in Virginia.

violation of a public policy which required in a proper case the modification of a support provision pursuant to equitable considerations. The court noted that the Legislature had given the courts power to provide for and to modify provisions for support "as deemed necessary," citing former Civil Code section 139. (*Weisz* v. *Weisz, supra,* 19 Cal.App.3d 676, 682.) The court relied on decisions wherein an agreement for support had been incorporated or merged into a decree for divorce (*Hough* v. *Hough* (1945) 26 Cal.2d 605 [160 P.2d 15]; *Dunning* v. *Dunning* (1952) 114 Cal.App.2d 110 [249 P.2d 609]) to conclude that even in those instances when the parties had independently contracted for spousal support the same principles of public policy should apply to subject the agreement, in a proper case, to modification.

The *Weisz* case thus stands for the proposition that irrespective of the finality of an independent contractual provision for spousal support entered into in and pursuant to the laws of a sister state, the public policy of this state precludes giving effect to such an agreement when equitable considerations warrant a modification of that agreement. *Weisz,* however, does not aid Walter as that case relied on statutory provisions which no longer reflected the public policy at the time Walter sought relief in California.

Insofar as appears *Weisz* relied on former Civil Code section 139 and cases construing the language of that section prior to amendments in 1967. The critical statutory language at that time provided that a provision for the support and maintenance of the party in whose favor a divorce had been granted "may be modified or revoked at any time at the discretion of the court . . . ." (Stats. 1963, ch. 861, p. 2097.) However, in 1967 the judicial power to modify or revoke a support provision was legislatively withdrawn "to the extent that any written agreement, or if there be no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary." (Stats. 1967, ch. 133, pp. 1165-1166, filed May 12, 1967.) A second amendment in 1967 added a proviso which authorized a court to modify or terminate a support provision in favor of the wife upon proof that she was living with and falsely holding herself out to be the wife of another man "[e]xcept where the decree . . . is based upon an integrated property settlement agreement . . . ." (Stats. 1967, ch. 844, pp. 2269-2270, filed July 20, 1967.) That proviso was later modified in 1967 to authorize a court to modify or terminate a support provision in favor of either spouse upon proof that such spouse was living with and falsely representing himself or herself to be married to a third person "[e]xcept as otherwise agreed by

the parties in writing . . . ." (Stats. 1967, ch. 1308, pp. 3130-3131, filed Aug. 18, 1967.)

It thus appears in 1967 that notwithstanding the general judicial power to modify marital support provisions, that power was expressly limited by the Legislature in cases where the parties had entered into particular agreements which foreclosed judicial modification.[15] The action herein was commenced in 1970 and judgment was had in the superior court in 1971. Our public policy at those times remained consistent with the 1967 amendments to former Civil Code section 139, although that section was repealed in 1969. (Stats. 1969, ch. 1608, p. 3313.) Civil Code section 4801, which replaced former section 139 effective January 1, 1970 (Stats. 1969, ch. 1608, pp. 3333-3334), provided in subdivision (a) that any "order for support of the other party may be modified or revoked as the court may deem necessary . . . ."[16] However, section 4811 (Stats. 1969, ch. 1608, p. 3336) provided in subdivision (b) that the "provisions of any agreement or order for the support of either party shall be subject to subsequent

---

[15]It appears from the text of the opinion in *Weisz* that the adjudication affirmed therein may have been rendered after the effective dates of some or all of the 1967 amendments to former section 139. However, the opinion in that case does not purport to have recognized such amendments. It moreover appears that aside from the 1967 amendments the *Weisz* court may have erred in concluding that it was contrary to the public policy of this state to give recognition to an agreement which, under the law of a sister state, foreclosed judicial modification of a provision for spousal support. The decisions of this court predating *Weisz* clearly were to the effect that despite the then current language of former section 139 spouses *could* enter into particular agreements which foreclosed judicial modification of provisions for support. These were the "integrated property settlement agreements" which, if executed with the proper intent and in the proper form, even when incorporated with a decree of divorce, could not be judicially modified as to spousal support except within the terms of the agreement. (See *Plumer* v. *Plumer* (1957) 48 Cal.2d 820, 824-825 [313 P.2d 549]; see also 6 Witkin, Summary of Cal. Law (8th.ed.) pp. 5064-5068; cf. Stats. 1963, ch. 861, p. 2097 (Civ. Code, § 139).) Although an integrated property settlement agreement was one which merged spousal support obligations with property rights arising out of a marriage, the application of our laws to a conclusion which allowed spouses to contract in *any* manner which would finally foreclose judicial modification of spousal support provisions would have established a public policy not inconsistent with that of a state whose laws allowed spouses to contract irrevocably for spousal support independently of other property matters. Rights accrued under the law of a sister state will be denied recognition on grounds of public policy only when such recognition would be offensive to our public policy, that is' "would be prejudicial to recognized standards of morality and to the general interests of the citizens in" our state. (*Biewend* v. *Biewend, supra,* 17 Cal.2d 108, 113.) "A mere variance between the law of the forum and the law of the state where the cause arose does not alone warrant such denial of enforcement." (*Id.,* at p. 114.)

[16]Section 4801 also recognized the irrevocability of a support provision in subdivision (c), which authorized the court to modify or revoke support upon proof that a spouse was living with and holding himself or herself out to be the spouse of a third person, "[e]xcept as otherwise agreed by the parties in writing."

modification or revocation by court order . . . *except to the extent that any written agreement, or if there is no written agreement any oral agreement entered into in open court between the parties, specifically provides to the contrary.*" (Italics added.) Both sections 4801 and 4811 were amended in 1970 (Stats. 1970, ch. 1545, pp. 3138-3141; ch. 1575, p. 3285) but the amendments were not pertinent to any issue herein.[17]

It thus appears that whatever the California public policy at the time of *Weisz* (see fn. 14, *ante*), at the times the action herein was commenced and adjudicated California spouses could have entered into particular agreements for their support which could not be judicially modified. That policy has been expressly and consistently maintained by the Legislature since the 1967 amendments to former Civil Code section 139. Certainly no public policy is offended when judicial recognition is given to the law of a sister state which requires an identical result in similar circumstances, and comity thus requires that we give full force and effect to the Virginia agreement as construed pursuant to the laws of that state. As the obligation for support could not have been terminated or modified pursuant to the law of that state, it likewise cannot be terminated or modified in California. (*Avery* v. *Avery, supra,* 10 Cal.App.3d 525, 532; see also *Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 474 [283 P.2d 19]; *Biewend* v. *Biewend, supra,* 17 Cal.2d 108, 110.)

■ Walter's remaining contention is that the refusal to recognize a right to seek modification of the support provisions when equitable considerations compel such a modification is constitutionally prohibited. He argues that a spouse who defaults in a divorce action and is subject to a judicially imposed requirement for support can, on a proper showing, obtain judicial relief; that to deny the same right to such relief in the case of a spouse who instead bargained for the amount of his support obligation is a denial of equal protection and due process concepts.

The constitutional contentions are completely without merit. A sufficient answer to the equal protection argument is that there is no unreasonable classification merely because a spouse who bargains for a fixed measure of his support obligation is required to comply with his bargains, while a spouse who elects to abide by a judicial determination of the measure of support is entitled to a redetermination when the

---

[17]The pertinent language continues in the current versions of sections 4801 and 4811, except that the proviso relating to the modification or revocation of support provisions for a spouse living with and holding himself or herself out to be the spouse of a third party (see fn. 15, *ante*) has been eliminated.

circumstances warrant it. It is manifest that there is also no denial of due process merely because a contracting party is required to comply with his covenants, although it appears that due to altered circumstances he may have made a poor bargain. The "right to be heard," the lack of which Walter now complains, was waived by his failure to object to the provisions for spousal support at the time he asked the Virginia court to approve the agreement providing for support when it granted the decree prayed for by him. Walter's remaining contentions require no comment.

The judgment is affirmed.

Appellant's petition for a rehearing was denied August 20, 1975.