[No. G013523. Fourth Dist., Div. Three. Aug. 17, 1993.]

In re BRITTANY S., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
SHERI W., Defendant and Appellant.

1400

**COUNSEL**

John L. Dodd and Karen J. Dodd, under appointments by the Court of Appeal, for Defendant and Appellant.

Terry C. Andrus, County Counsel, and Michelle L. Palmer, Deputy County Counsel, for Plaintiff and Respondent.

Meyer I. Goldstein, under appointment by the Court of Appeal, for Minor.

OPINION

**SILLS, P. J.**—In this appeal we are faced with two troubling and recurring problems, one substantive, the other procedural. The substantive problem is this: If a minor becomes a dependent under the Welfare and Institutions Code because the minor's parent is incarcerated, what reunification services are appropriate and reasonable? The issue is important because reunification services are a major component of the "service plan," and a parent's failure to comply with the service plan almost invariably leads to termination of parental rights. If a parent cannot avail himself or herself of reunification services because of incarceration, it is a fait accompli that the parent will fail to comply with the service plan. That is what occurred here. While "use a gun, go to prison" may well be an appropriate legal maxim, "go to prison, lose your child" is not. We therefore reverse the judgment. We also hold that all issues raised by the parent in this appeal are properly before us, even though she did not seek extraordinary relief at an earlier stage of the proceedings.

FACTS

The minor, Brittany S., was born on March 27, 1989. Less than eight months later, and while Brittany was living with her parents, her father was murdered. Brittany's mother, appellant Sheri W., apparently sought the assistance of the deceased father's parents, Mr. and Mrs. A., in raising Brittany. Unfortunately, Sheri also continued her life of crime, which had begun in 1984, and included convictions for attempted robbery, being under the influence of a controlled substance, receiving stolen property, and misdemeanor burglary.[1] In April 1991, Sheri was arrested for possession of methamphetamine, and this arrest caused Brittany to be taken into protective custody under Welfare and Institutions Code section 300.[2] Brittany was placed with Mr. and Mrs. A., who lived in Whittier. Sheri was released from Orange County jail on May 5 but was arrested two days later for robbery and (as the social services report states) "conspiracy to commit a crime under two felony counts." She was later sentenced to eight years in prison; her targeted release date is July 1995.

While Sheri was being held in county jail, but before she was sentenced to prison, the trial court approved the service plan developed by respondent Orange County Social Services Agency (SSA). Although the SSA report

[1]According to Sheri's mother, Sheri had "involvement with drugs and incarcerations since the age of thirteen."
[2]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

containing the proposed service plan referenced the fact that Sheri was in custody, much of the plan itself was inapplicable to a prisoner (e.g., attend a drug treatment program, maintain suitable housing, demonstrate a source of legal income, etc.).[3] More important, however, were the visitation terms, which provided for weekly supervised visits if Sheri was not incarcerated and, "[i]f the minor's mother is incarcerated, [she is] to demonstrate an interest in the minor by a phone call at least once a week and/or written communication to the minor at least once a week." Brittany was just over two years of age at this time.

Although the service plan apparently restricted Sheri's contacts with Brittany to letters and telephone calls, SSA eventually arranged one visit per month in county jail in August, September, and October 1991. These were the only occasions throughout the life of the service plan that Sheri was allowed to see Brittany. Sheri was apparently transferred to a correctional facility in Frontera in July and, although Frontera is only 36 miles from Whittier (where Brittany lived), SSA arranged no visits while Sheri was incarcerated there. Likewise, no visits were arranged when Sheri was transferred to a more distant facility in Chowchilla. Sheri maintained weekly telephone contact for the duration of the service plan; she testified she also wrote occasional letters but, because of Brittany's age, "the phone contact is just a lot easier. I think she understands that better."

Undisputed evidence presented at the contested 12-month review hearing indicated that Sheri had participated in every program relating to drug abuse, alcohol abuse, and parenting that was available through the Department of Corrections. However, the social worker assigned to the case, Michelle Roseman-Cavalli, testified she never attempted to determine if Sheri had participated in any program while in prison. Roseman-Cavalli had also been informed before the 12-month review hearing that Sheri had requested to participate in a "community treatment program" (see Pen. Code, § 3410 et seq.); under that program, Sheri could conceivably have been released to a public or private facility for a period of time to care for Brittany. (See Pen. Code, §§ 3411, 3412.)[4] However, Roseman-Cavalli did not ask anyone at the Department of Corrections about the program, and had no other knowledge about it.

The trial court held, on the basis of clear and convincing evidence, that the return of Brittany would create a substantial risk of detriment. The court also found that there had not been substantial compliance with the service plan,

---

[3] We are fearful that, in the era of the word processor, boilerplate terms are inserted into service plans regardless of their applicability to a particular parent.

[4] This program is referred to in the record as the "Community Mother Infant Program."

and therefore ordered termination of reunification services. The court further held without additional comment that Sheri had not met the criteria for the community treatment program. The court therefore ordered a permanency planning hearing to terminate parental rights under section 366.26. Finding Brittany adoptable at that hearing, the trial court terminated Sheri's parental rights. This appeal followed.

## DISCUSSION

### I

We must first resolve a procedural issue. ■■ All parties agree Sheri's primary ground for reversal lies in her contention that the reunification services she was offered were not reasonable. SSA asserts that this issue can only be raised on a petition for extraordinary relief following the hearing at which services are terminated (here, the 12-month review). SSA cites a number of recent cases to support its position.[5] With all due respect to our appellate colleagues, we believe these decisions are incorrect, because the operative statute does not say what these opinions apparently wish it would. Further, these decisions are completely at odds with the usual rules of appellate review.

We begin with a rule with which all appellate practitioners are familiar. ■■ ■■ Code of Civil Procedure section 906, which applies in dependency cases (see *In re Debra M.* (1987) 189 Cal.App.3d 1032, 1036 [234 Cal.Rptr. 739]), states: "Upon an appeal [from a final judgment or a post-judgment order], the reviewing court may review the verdict or decision *and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . .*" (Italics added.) This statute is part and parcel of the "one final judgment rule" which, as our Supreme Court has explained, exists because " 'piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and . . . a review of intermediate rulings should await the final disposition of the case.` '" (*Knodel* v. *Knodel* (1975) 14 Cal.3d 752, 760 [122 Cal.Rptr. 521, 537 P.2d 353]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 43, p. 67.)

■■ SSA contends that section 366.26, subdivision (k) abrogates the usual rules of appellate review, arguing that any challenge to the adequacy

---

[5]Our Supreme Court has granted review in at least one of these cases, *In re Matthew C.*■ (Cal.App.) review granted April 23, 1992 (S025565). To our knowledge, however, neither *Matthew C.* nor any other case raising these appealability issues has yet been argued.

of reunification services must be asserted in a writ petition following termination of those services (usually, where the court orders a permanency planning hearing). Section 366.26 deals with permanency planning hearings; subdivision (k) of that statute provides: "An order by the court directing that a hearing pursuant to this section be held is not an appealable order, but may be the subject of review by extraordinary writ." The meaning of this statute is clear: If a court orders a permanency planning hearing, that order is not immediately appealable, but an aggrieved party may seek review at that time through a petition for extraordinary writ. "Nonappealable" does not mean "nonreviewable"; there is nothing in the statute to indicate that the aggrieved party forfeits the right to challenge the order on an appeal from the final judgment (often the judgment terminating parental rights).

Other courts, however, have not ascribed this clear meaning to the statute. Achieving a result which can only be described as "writ it or lose it," they have held that a challenge to the adequacy of reunification services can *only* be made through a petition for extraordinary relief. (See, e.g., *In re Tammy H.* (1992) 11 Cal.App.4th 48, 52-53 [14 Cal.Rptr.2d 16], and cases cited therein.) We might be persuaded by these cases if section 366.26, subdivision (k) was drafted like other statutes which limit appellate review solely to an extraordinary writ. The Legislature certainly knows how to draft such a statute; for example, under Code of Civil Procedure section 170.3, subdivision (d), a challenge to a judge's refusal to accept disqualification "is not an appealable order and may be reviewed *only* by a writ of mandate . . . ." (Italics added.) Subdivision (k) of section 366.26 does not limit a party "only" to writ relief; we decline to interpret it in such a fashion.

The overriding theme of the cases which we decline to follow is that permitting review of the reasonableness of reunification services in a post-termination appeal "delay[s] dependency proceedings, contrary to the strong public policy against protracted litigation in these cases." (*In re Tammy H., supra*, 11 Cal.App.4th at p. 52.) We fail to see how precluding one issue (the adequacy of reunification services) on an appeal from the termination of parental rights will have any appreciable impact on the length of time required to conclude a dependency proceeding. Even when parental rights are terminated and a minor is freed for adoption, the earliest that such an adoption could occur would be after the appeal from the judgment terminating parental rights became final. Eliminating a potential issue in such an appeal does not speed up the process.

There is little to be gained by following the "writ it or lose it" rule, and much to lose. The present case is a perfect example. As we hold in part II of this opinion, the reunification services offered in this case were unreasonable. We would be precluded from even reaching that issue, however, by

reading a "forfeiture" provision into section 366.26, subdivision (k). Public confidence in the court system erodes any time a court refuses to consider the merits of an issue for procedural reasons. Such reasons should always be clearly spelled out in a statute. That clarity is lacking here.

Seeking writ relief following the cessation of reunification services is certainly a preferable method of obtaining appellate review. Under rule 39.2 of the California Rules of Court, which applies only to Orange County, "Extraordinary writs are encouraged to review orders in child custody proceedings." (Cal. Rules of Court, rule 39.2(b).) In many cases where a party waits for an appeal to raise these issues, intervening events may render any error harmless, and failure to seek writ relief may forfeit an otherwise just claim. We cannot overemphasize the importance of adhering to rule 39.2 and the use of extraordinary relief to challenge orders in dependency cases. Nonetheless, a failure to file for such relief does not preclude review of orders issued before final judgment.[6]

## II

Having not been blinded by procedure, we proceed to the merits. ▮ The trial court found that SSA offered Sheri reasonable reunification services as set forth in the service plan, and that Sheri had not complied with that plan. Sheri contends these findings are not supported by substantial evidence. We agree.

Under section 361.5, subdivision (e)(1) (hereafter simply subdivision (e)(1)), reasonable reunification services must be offered to an incarcerated parent "unless the court determines those services would be detrimental to the minor." When Brittany was declared a dependent under section 300, SSA did not contend (and the trial court did not find) that reunification services would be detrimental to Brittany. Accordingly, when the court ordered a reunification plan for this mother and daughter, it was required to be a reasonable one. ▮ As a recent opinion observed, "A 'mechanical approach' to a reunification plan is not what the Legislature intended: '[s]uch a plan must be appropriate for each family and be based on the unique facts relating to that family.' [Citations.] The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of

---

[6]Appellate courts are not of a single mind concerning what is a "final judgment" in juvenile dependency cases. Because an appealable judgment is entered at the dispositional hearing (see § 395), it could be argued that all subsequent rulings, including orders terminating parental rights, are postjudgment orders. This appears to be an unduly academic approach that fails to recognize the realities of the subsequent proceedings. As a practical matter, the termination ruling is the final decision in the dependency process; in our view, it should be treated as a final judgment for appellate purposes.

success." (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777 [8 Cal.Rptr.2d 416].)

The most obvious problem with the service plan in this case is the failure to provide for visitation. Sheri spent almost all of her time leading up to the 12-month review hearing incarcerated in facilities that were less than 40 miles from where Brittany lived; and yet, the service plan limited contact to telephone calls and letters. Although one provision of subdivision (e)(1) states that a service plan may include "[m]aintaining contact between parent and child through collect phone calls" (subd. (e)(1)(A)), the plan should also include "[v]isitation services, where appropriate." (Subd. (e)(1)(C).) We fail to see how visitation could not have been appropriate when Sheri was incarcerated at either county jail or Frontera.[7] Particularly where the child is young (and Brittany was two to three years of age during the pertinent time period), limiting contact to letters and telephone calls should be used only as a last resort.[8] By not providing visitation, SSA virtually assured the erosion (and termination) of any meaningful relationship between Sheri and Brittany.

Visitation could well have made the difference in this case because, contrary to the trial court's findings, Sheri substantially complied with the service plan as drafted. The plan required Sheri to "address her issues of drug abuse and criminal lifestyle through programs available at state prison." That is precisely what she did; yet the social worker assigned to her case did not even bother to monitor Sheri's progress in these programs. Unfortunately, this appears to be a case where an incarcerated parent was destined to lose her child no matter what she did. We cannot condone such a result.

### CONCLUSION

As in almost every case where a judgment terminating parental rights is reversed, the minor suffers to a certain extent because his or her life in still in limbo. That appears to be less of a problem here, however, where Brittany

---

[7]We simply cannot agree with the following provision of the revised service plan: "Due to the minor's tender age and the distance to California [*sic*] Institute from the minor's home, a visitation schedule more frequent than every three months would create an undue hardship for the minor." First of all, as mentioned above, the "distance" was only 36 miles. Second, the lack of personal contact with her mother created at least as much of an "undue hardship" on Brittany as limiting contact to telephone calls and letters. Third, the service plan seems to contemplate visitation every three months following Sheri's transfer to Frontera; that, of course, did not happen.

[8]For example, limiting contact to letters and telephone calls may well be appropriate where the parent is incarcerated some distance from where the minor resides.

will presumably remain with Mr. and Mrs. A., who were her prospective adoptive parents as well as her paternal grandparents.

The judgment terminating parental rights is reversed. The trial court is ordered to direct SSA to develop a service plan consistent with the views expressed in this opinion.

Wallin, J., concurred..

**MOORE, J.,** Concurring.—I concur in the result and the analysis contained in part II of the majority opinion. I also agree with the result in part I, but I reach that conclusion by a different route.

In this case, at the 12-month review hearing the juvenile court found reasonable family reunification services had been offered to mother (Welf. & Inst. Code, § 366.21, subd. (f))[1] and set the matter for a permanency planning hearing pursuant to section 366.26. (§ 366.21, subd. (g)(3).) In part I, the majority conclude a writ would have been the only way to attack the juvenile court's finding on the reunification services prior to the permanency planning hearing. (Maj. opn., *ante,* at p. 1406, fn. 6.) Nonetheless, the majority hold the mother's right to challenge the finding was preserved for appeal by concluding that, while she could have attacked it by a writ, her failure to do so did not preclude her from raising the issue by appeal from the order terminating her parental rights. (Maj. opn., *ante,* at pp. 1404-1406.)

A different analysis is required under *In re Megan B.* (1991) 235 Cal.App.3d 942 [1 Cal.Rptr.2d 177]. In *Megan B.,* this court held that subdivision (j) of section 366.25 (and by parity of reasoning section 366.26, subdivision (k)) precludes an appeal from an order "authorizing the filing of a parental termination action or initiating a guardianship proceeding" and "other contemporaneous rulings . . . if the appellant's contentions are designed to overturn the court's order that authorizes the filing of a petition to terminate parental rights." (*Id.* at p. 951, internal quotation marks omitted. See also *In re Eli F.* (1989) 212 Cal.App.3d 228, 235-236 [260 Cal.Rptr. 453].) If the juvenile court's finding on the reasonableness of the reunification services does not constitute a contemporaneous ruling designed to overturn the juvenile court's order setting the matter for a permanency planning hearing, then mother's failure to appeal from the 12-month review hearing would preclude a consideration of that issue in this appeal since her

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

challenge would be untimely. (*In re Megan B., supra,* 235 Cal.App.3d at p. 950; *In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563 [283 Cal.Rptr. 483].) Thus, the crucial question is whether that finding was so closely aligned with the order setting the matter for a permanency planning hearing that a direct appeal challenging it would be precluded.

A conflict exists concerning whether a finding on the adequacy of a reunification plan is covered by sections 366.25, subdivision (j) and 366.26, subdivision (k). *In re Kristin W.* (1990) 222 Cal.App.3d 234 [271 Cal.Rptr. 629] held a parent could attack the sufficiency of the reunification plan by an appeal taken before the permanency planning hearing. "Although the alleged insufficiency of the reunification efforts which were offered to petitioner contributed to the issuance of the permanency planning order and, thus, arguably, is subsumed in that order, this allegation does not constitute a direct attack on the authorization order. Therefore, the issue concerning the insufficiency of the reunification services before the permanency planning decision was made is cognizable on appeal." (*Id.* at p. 248.)

But in *In re Elizabeth M., supra,* 232 Cal.App.3d at pages 562-563, Division Two of this court criticized *Kristin W.* and refused to follow it. *"We disagree with the statement in Kristin W. that section 366.25, subdivision (j) does not preclude a challenge on appeal to the adequacy of reunification services. The remedy [appellant] seeks is reversal of the authorization order. A challenge directed toward overturning such an order falls squarely within section 366.25, subdivision (j)."* (*Id.* at p. 563.)

I believe *Elizabeth M.* reaches the correct result. Except for certain limited circumstances, the juvenile court must direct family reunification services be provided to a parent whenever a child is removed from the parent's custody. (§ 361.5, subds. (a) & (b).) This requirement also applies to an incarcerated parent except where the services would be detrimental to the child. (§ 361.5, subd. (e)(1).) Here, the trial court apparently found the exception did not apply.

"[P]rior to ordering a section 366.26 hearing, a juvenile court must determine that reasonable reunification services have been provided or offered to the parents of a dependent child. [Citations.] This determination is thus a prerequisite to the section 366.26 permanency hearing." (*In re Michelle M.* (1992) 4 Cal.App.4th 1024, 1034 [6 Cal.Rptr.2d 172].) Consequently, a failure to provide adequate reunification services directly affects the juvenile court's ability to order a permanency planning hearing.

Since mother is attacking the juvenile court's finding she received adequate reunification services, her claim constitutes an attack on a contemporaneous ruling intended to overturn the order setting the matter for a permanency planning hearing under section 366.26. Thus, it was also not appealable under section 366.26, subdivision (k) and mother is entitled to raise the issue in this posttermination of parental rights appeal.

Respondent's petition for review by the Supreme Court was denied December 16, 1993.