[S. F. No. 5755.    In Bank.—March 8, 1911.]

## JOHN DOUDELL, Respondent, v. JOHN J. SHOO et al., Appellants.

PARTNERSHIP—FINAL DECREE—TRANSFER OF POSSESSION—FINAL IN-JUNCTION—APPEAL—BOND FOR COSTS—EXECUTION NOT STAYED—SUPERSEDEAS DISALLOWED.—Upon appeal from a final decree adjusting the affairs of a partnership, and providing for its continuance on the settled basis, to pay secured indebtedness, and for the transfer of possession to the managing partner, whose possession had been interfered with, and for a final injunction against such interference, where the only bond given by the appellants was a three-hundred-dollar bond for costs, and no application had been made to the superior court to fix the amount of a stay-bond upon such appeal, an application by the appellants to this court for a writ of *supersedeas* will be disallowed, without regard to the mode in which the possession was transferred.

ID.—INTERLOCUTORY DECREE NOT FINAL.—An interlocutory decree merely determining the existence of a partnership, and that an

accounting is necessary between them, and ordering a full and complete accounting before a referee appointed for that purpose was not a final decree, and was not intended by the court to be an ultimate adjudication of the merits between the parties.

ID.—SINGLE FINAL JUDGMENT CONTEMPLATED.—Our system of procedure contemplates that there shall be but one final judgment in a cause, and in the absence of a clear showing it is not to be presumed that the court would attempt to dispose of a case piecemeal, by successive final judgments, each covering part of the matters in controversy.

ID.—INJUNCTION PENDENTE LITE—EFFECT OF STAY-BOND ON APPEAL—POWER OF COURT NOT SUPERSEDED—EXPIRATION AT FINAL DECREE.—Though an injunction *pendente lite* granted at the time of such interlocutory decree to prevent interference with possession ordered to be changed to a managing partner is appealable, and a stay-bond thereon prevented such change of possession pending the appeal; yet such appeal did not supersede the power of the court to proceed to final decree, and where a permanent injunction was embodied in the final decree to prevent the same interference, the injunction *pendente lite* expired with such decree, and nothing further can be claimed by virtue thereof.

APPLICATION for Writ of Supersedeas to stay execution pending an appeal from a judgment of the Superior Court of Fresno County.

The facts are stated in the opinion of the court.

A. L. Frick, Carter & Carter, and Carl F. Wood, for Appellants.

C. K. Bonestell, for Respondent.

SLOSS, J.—The action was commenced in the superior court of Fresno County. The complaint alleged that a partnership agreement had been entered into between the plaintiff and the defendant, John J. Shoo; that under said agreement the plaintiff was to have the sole management of the business, which was that of a billiard and pool hall, together with a saloon and cigar store; that on February 8, 1910, the defendant excluded the plaintiff from the premises occupied by the firm and from all participation in the affairs of the copartnership. It was further alleged in the complaint that large profits made in the business were unaccounted for; that certain real property belonging to the partnership had been

transferred to the defendants other than John J. Shoo; and prayer was made that the defendants be enjoined from interfering with plaintiff in the management of the business and the partnership property; that a receiver be appointed to carry on the business pending the action; and that an accounting be had between the parties.

An answer was filed denying that any partnership agreement had ever been entered into, and denying that the plaintiff ever had any interest as partner, or otherwise, in the business or property referred to in the complaint.

On the sixth day of June, 1910, the court, after a hearing, filed a document entitled "Findings of fact, conclusion of law, interlocutory decree." This paper, after reciting a trial, finds that since July, 1909, the plaintiff and the defendant, John J. Shoo, have been conducting as partners a saloon and cigar business and a billiard hall on the premises described in the complaint; that the real and personal property described in the complaint is partnership property of said partners; that in February, 1910, the defendant, John J. Shoo, wholly excluded plaintiff from the partnership property and business and has ever since refused to account to him concerning the partnership affairs. It is found that profits have been derived from the business; that a portion of said profits has been expended by the partners; that payments have been made on account of the unpaid purchase price of the real property; that the partners have received unequal shares of the profits of said business; that there are outstanding debts, among which is a debt due the defendant Herrick, who holds the legal title to the real property of the partnership as security for his loan.

There is but one conclusion of law, which is "that an accounting is necessary between plaintiff and the defendant, John J. Shoo, covering all the property and business of the partnership found to exist between them from the commencement thereof." The decree, entered upon these findings and this conclusion of law, was styled by the court an "interlocutory decree." It ordered that a full and complete accounting be taken of all the partnership dealings between the plaintiff and John J. Shoo and that D. M. Speed be appointed referee for that purpose. The referee was directed to report an itemized statement of the facts to the court, stating separately

the amounts contributed by each of the partners to the partnership business, the receipts from the business, rents received from the real property, amounts expended for repairing buildings, for fixtures, furniture, etc., for merchandise and stock in trade, for salaries, for interest; also the amounts received by each of the partners from said business for his personal account, the amount of partnership assets in the business or under the control of the defendant John J. Shoo, and the debts of the copartnership. It was further ordered that the sheriff restore the plaintiff to the possession of the premises and that the defendants be enjoined from interfering with the plaintiff in the exercise of his rights and duties as managing partner of the partnership. The decree concludes with these words: "It is further ordered that the making of further findings of fact and law and other matters to be determined herein be reserved until the coming in and settlement of the referee's report."

The defendants served and filed a notice of appeal from this judgment and applied to the court below for an order fixing the amount of an undertaking on said appeal to stay the execution of said judgment in so far as it directed the delivery of real or personal property. The court declined to make such order and on July 5, 1910, this court issued its peremptory writ of mandate requiring the superior court of Fresno County to fix the amount of such undertaking. Thereafter such amount was so fixed at seventy-five thousand dollars, an undertaking was filed by the appellants and the court below ordered the execution of the judgment stayed, and ordered the sheriff of Fresno County to restore the defendants to the same possession of the property as they had had prior to the entry of the judgment.

On September 15, 1910, the superior court filed its decision reciting the making of the prior findings and of the order appointing a referee to take an account, reciting that the referee had made his report, that the court had examined said report, and that the same was based upon competent evidence. The decision adopts the facts found by the referee, finds anew the making of the partnership agreement and the conducting of the business by Doudell and Shoo as partners, and then goes on to make elaborate findings showing the amounts paid by the respective partners, the pur-

chase of property for the partnership, the indebtedness incurred by defendant Shoo and the security given for such indebtedness, the receipts of the partnership business, the expenditures in conducting the business, and the amounts received by each of the partners. As conclusions of law the court finds that the plaintiff and the defendant John J. Shoo, have equal interests in the real and personal property described in the complaint, that the defendant Herrick holds the legal title to said property as security for the repayment to him of certain moneys advanced, that the defendant John J. Shoo has a lien upon the real estate for a certain amount found to be due him, that the plaintiff is entitled to recover costs from the defendant John J. Shoo, and that the defendants should be enjoined from interfering with plaintiff in the exercise of his rights in managing the partnership. A decree designated as a "Final Decree" was made carrying into effect these conclusions of law. Thereupon the defendants served and filed a notice of appeal from this decree and filed an undertaking on appeal in the sum of three hundred dollars.

The present petition is presented by the defendants and appellants and alleges that upon the entry of the final decree the sheriff of the county of Fresno, acting under and by virtue of said decree, removed the petitioners from the possession of the property described in said interlocutory decree and said final decree and delivered the possession thereof to the plaintiff, who has ever since had, and now has, the possession of the same. They ask for a writ of *supersedeas* to protect their possession pending the appeal.

Upon the hearing of this application the plaintiff appeared and denied that he had been put in possession by the sheriff, or under the order of the court, averring that he had, without the interposition of the court, or any officer thereof, claimed possession under the decree and that such possession had been surrendered to him. It will not be necessary to determine the issue of fact so presented as we are satisfied, upon the showing made by the petitioners, that they are not entitled to the relief sought.

No undertaking to stay execution was given upon the last appeal, i. e., that from the decree entered in September 1910. That decree, like the interlocutory decree, undertook to enjoin

the defendants from interfering with the plaintiff in the exercise of his rights and duties as managing partner. Its effect was to direct a delivery of the possession of real and personal property (see *Clute* v. *Superior Court,* 155 Cal. 15, [132 Am. St. Rep. 54, 99 Pac. 362]) and its enforcement could not be stayed without the giving of a bond in an amount to be fixed by the judge of the court below. (Code Civ. Proc., secs. 943, 945.) The appellants have not applied to have the amount of such bond fixed.

The petitioners seek to avoid the conclusion that they have not acquired the right to have proceedings stayed by the claim that the so-called interlocutory decree of June 6, 1910, was in fact a final judgment and that the giving of a bond to stay execution on that judgment prevented the court below from carrying the same into effect, whether by means of further decree or otherwise. Under the ordinary definition of final decree the judgment entered on June 6, 1910, was not final. A judgment is final "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." (*Klever* v. *Seawall,* 65 Fed. 373, [12 C. C. A. 653]; *The Express Co.'s case,* 108 U. S. 24, [2 Sup. Ct. 6, 27 L. Ed. 638]; *Griffin* v. *Orman,* 9 Fla. 22, 46, 47; see, also, *In re Smith,* 98 Cal. 636, 640, [33 Pac. 744].) The first decree entered in this cause was certainly not intended by the court to be an ultimate adjudication of the merits as between the parties. It was based upon findings which determined none of the questions at issue except the fact of partnership and the existence of mutual and undetermined claims and demands, and upon a conclusion of law which declared no more than that an accounting was necessary. The decree, declared by the court itself to be an "interlocutory decree," appointed a referee to state an account, the settlement of which was essential to the fixing of the relative rights of the parties in the partnership property. Under all the authorities such a decree is not final. (*White* v. *Conway,* 66 Cal. 383, [5 Pac. 672], distinguishing *Clark* v. *Dunnam,* 46 Cal. 208, relied on by the petitioners; note to *Williams* v. *Field,* [2 Wis. 421]; 60 Am. Dec. 426, 435; *Gray* v. *Palmer,* 9 Cal. 616; *Rhodes* v. *Williams,* 12 Nev. 20; *Cocke's Adm'r.* v. *Gilpin,* 1 Rob. (Va.) 20.)

But if the judgment of June 6, 1910, viewed as a whole,

cannot be regarded as final, the petitioners argue that it was, nevertheless, final with respect to the matter here complained of, i. e., the order of injunction; that this injunction was merely repeated by the decree of September, 1910, and remained in force by virtue of the original judgment of June 6, notwithstanding the entry of a subsequent decree disposing of other issues. If the first decree was a final adjudication of the rights of the parties with respect to any matter contained in it, it might well be claimed that the appeal from that order, together with the giving of the bond required by the order of the trial court, would stay the power of the court to take any further proceedings with reference to the matter covered by the judgment appealed from while the appeal remained undisposed of. (Code Civ. Proc., sec. 946; *Vosburg* v. *Vosburg,* 137 Cal. 493, [70 Pac. 473].) But we are satisfied that the judgment of June 6, 1910, is not to be construed as a final determination of the rights of the parties with respect to any of the matters embraced therein. In the first place, our system of procedure contemplates that there shall be but one final judgment in a cause (*Thompson* v. *White,* 63 Cal. 505; *Thompson* v. *White,* 76 Cal. 381, [18 Pac. 399]; *Stockton Works* v. *Ins. Co.,* 98 Cal. 557, 577, [93 Pac. 633]; *Nolan* v. *Smith,* 137 Cal. 360, [70 Pac. 166]), and in the absence of a clear showing, it is not to be presumed that the court would attempt to dispose of a case piecemeal by successive final judgments, each covering a part of the matters in controversy.

In view of the nature of the findings and of the decree entered on June 6, 1910, we think the injunction, which was a part of that decree, should be interpreted as intended to be no more than an injunction *pendente lite,* and that its operative force therefore ended with the entry of the final decree. By the judgment of June 6, 1910, the court did not undertake to determine the rights of the parties. It did not decide that the partnership found to exist between the parties should or should not be dissolved. It went no further than to determine that there was a partnership of which plaintiff was managing partner, that plaintiff had been excluded therefrom, and that an accounting was necessary in order to fix the relative property rights of the parties. As an incident to the ordering of this accounting, it undertook to enjoin the defendants from

interfering with the plaintiff in his conduct of the business as managing partner. But the determination of the further questions remaining at issue between the parties was expressly reserved for subsequent adjudication. While the injunction was not in terms limited to the pendency of the action, it seems clear that its purpose was merely to hold matters in what the court found to be the existing condition, until the rights of the parties should be finally adjudicated. Upon the entry of a final decree, the court might have decided that the partnership should be dissolved and the property sold. Had it done so, there would be little question that the injunction theretofore granted would have ceased to be effective. The injunction gained no additional force from the circumstance that the court, upon a final hearing, left the partnership in existence, and re-ordered an injunction.

If this be so, the prohibitive relief granted by the interlocutory decree of June 6, 1910, was simply the injunction *pendente lite* provided for in section 525 et seq. of the Code of Civil Procedure. It was a provisional remedy, intended to cover the interval which should elapse before the entry of the final decree. Upon such entry the "provisional remedy was merged in the perpetual injunction thereby granted to the plaintiff, and ceased to have any operative effect." (*Sheward v. Citizens Water Co.*, 90 Cal. 635, 638, [27 Pac. 439, 440]; *Lambert v. Haskell*, 80 Cal. 611, [22 Pac. 327].)

Under these views, the appeal from the decree of June 6, 1910, did not affect the power of the court to subsequently make a final decree disposing completely of all of the issues involved in the case. The order for the temporary injunction was appealable by the terms of section 963 of the Code of Civil Procedure. In so far as it was mandatory in character, its enforcement could be stayed pending such appeal. (*Clute v. Superior Court*, 155 Cal. 15, [132 Am. St. Rep. 54, 99 Pac. 362], and cases cited.) But the appeal did not operate to deprive the court of power to proceed to a final hearing of the case. If the final decree had resulted in a judgment in favor of the defendants, the temporary injunction would have fallen to the ground. The same effect must follow where an injunction is granted anew by the final decree, and this for the reason, as stated above, that the injunction of June 6th was intended to be operative only until the final hearing, and its

effect has accordingly ceased by the expiration of the time during which it was designed to have life.

The application for a writ of *supersedeas* is denied.

Shaw, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.