[Civ. No. 8968.   Third Dist.   May 16, 1957.]

AMBROSE J. MURPHY et al., Appellants, v. FONG
SHUCK et al., Respondents.

James F. Galliano and C. Paul Paduck for Appellants.

Hewitt & McBride, Manwell & Manwell, Gilford G. Rowland
and George E. Paras for Respondents.

VAN DYKE, P. J.—This is an appeal from an order of
the trial court entered in its minutes granting nonsuits as to
various causes of action in a case based upon alleged violations
of four separate collective bargaining agreements entered into
by Retail Clerks International Association, hereinafter called
the union, and copartnerships doing business as Park Grocery
(hereinafter called Park), Yuba Grocery (hereinafter called

Yuba), Linda Super Market (hereinafter called Linda), and Sutter Super Market (hereinafter called Sutter). The granting of the nonsuits left but three counts undetermined as to two defendants. The issues in these three counts were submitted to a jury, who returned verdicts in favor of the defendants involved.

When the appeal was called on the calendar of this court for argument, counsel for respondents orally moved the court to dismiss the appeal upon the ground that the orders entered in the clerk's minutes from which the appeal was specifically taken were not appealable orders, it appearing that no formal judgment based upon nonsuits had ever been entered in the cause.

As to the ground for dismissal urged upon the court, respondents' contentions cannot be sustained. ■ An order granting a nonsuit duly entered in the minutes of the court, if it disposes of the action, amounts to a judgment of nonsuit from which an appeal will lie. (*Wulfjen* v. *Dolton*, 24 Cal.2d 878, 879-880 [151 P.2d 840]; *Nicholson* v. *Henderson*, 25 Cal. 2d 375, 378 [153 P.2d 945].) However, our review of the record has suggested the fundamental question whether the judgment or order appealed from or any judgment or order made is a final judgment within the meaning of the rule set forth in Code of Civil Procedure, section 963, which provides that appeals may be taken only from final judgments and from certain other specific orders and decrees with none of which we are here concerned. The final judgment rule on appeals is a matter of statute in California, and our courts have consistently applied it. Since the issue is jurisdictional, it is incumbent upon this court to determine whether or not we have a final judgment in the case from which an appeal may be taken. This necessitates a review of the pleadings and of pertinent parts of the record.

The complaint contained 12 counts. Generally, it was alleged that the union is an unincorporated labor organization affiliated with the American Federation of Labor, which charters several hundred local unions in the United States and Canada, having a total membership of about 300,000; that Retail Clerks International Association Local Number 17, likewise an unincorporated association, is chartered by the union and acts as agent for the union in the counties of Sutter, Yuba, Butte, Glenn and Nevada; that members of the local are by virtue of that membership also members of the union; that plaintiff

Ambrose J. Murphy is the financial secretary-treasurer of the local and is a member of the union by virtue of his membership in the local; that he brings the action in a representative capacity because the persons equally interested are numerous and it is impractical to bring them all before the court; that Park, Yuba, Linda and Sutter are partnerships, the individual defendants being members of one or more of the partnerships; that four separate collective bargaining agreements were executed between the union and the several partnerships, all of which run food stores in Yuba and Sutter Counties; that these written contracts were negotiated by the union with the several partnerships as bargaining agent for their union employees and provide a wage scale for each and all of the employees of the partnerships, who by the agreement undertook to pay the agreed wages and to grant other benefits to the employees covered; that the agreements were entered into for the benefit of the members of the union, particularly of those who were also members of the local union; that generally, and especially as to wages, hours and working conditions, the agreements were replicas of each other and also of a great number of other collective bargaining agreements entered into between the union and many competing employers operating food stores in the said counties; that each of the partnerships entered into its agreement with no intention of performing the same in respect to provisions for wages, hours and working conditions contained therein, but on the contrary each partnership intended to secretly and unlawfully pay their employees covered by the agreements a lesser remuneration than agreed, and to thereby defraud the employees and the union and other employers in the retail food industry in said counties who were parties to other collective bargaining contracts with the union providing for the same hours, wages and working conditions; that the partnerships having so contracted wilfully, maliciously and unlawfully put into effect and continued in effect a general and continuing agreement, scheme, conspiracy and combination amongst themselves, the substantial terms of which were to wilfully and unlawfully deprive their said employees of the benefits secured to them by the agreements; that in pursuance of said conspiracy, the partnerships induced, coerced and compelled their employees as a condition of employment to work overtime without receiving the agreed rate therefor and to lodge and board with the partnerships while submitting to arbitrary deductions therefor; that in further pursuance of said conspiracy, the partner-

ships instructed and required their employees under threat of discharge not to discuss with the representatives of the union their actual hours of work and actual wages received, and that the partnerships threatened their employees with discharge from employment and with blacklisting for employment by other Chinese merchants if they reported or complained to the union or to any governmental agency in respect to their wages and their working conditions; that the actions of the partnerships in coercing and compelling their employees to work for less wages than those arrived at through collective bargaining had imposed upon them terms and conditions of labor not from voluntary agreement but based upon the helplessness of the employees to exercise actual liberty of contract; that by their conduct the partnerships were enabled to and did withhold from their employees wages due them under the collective bargaining agreements and obtained for themselves an unfair and fraudulent advantage over their competitors operating under like agreements; that these actions of the partnerships and the concerted acts of all of them violated the provisions of sections 223 and 226 of the Labor Code and constituted criminal offenses under section 225 thereof; that the acts constituted deceitful practice and fraud in respect to the union and its members; that the direct and proximate result of the conduct of the partnerships and of their fraud, deceit and conspiracy caused damage to the union and to the members thereof, as follows: That each and all of the members of the union who performed work for the partnerships under the agreements were deprived of the benefits of collective bargaining and had suffered financial loss and damage in that they had not been fully paid; that the damage thus suffered was unknown to plaintiff, but he alleged on information and belief that wages had been withheld by the partnerships in the gross sum of $264,430.80, segregated as follows: To Park, $41,625; to Yuba, $63,000; to Linda, $97,800; to Sutter, $62,004.80; that the union itself had been damaged in that it had been and would be hampered in and prevented from properly and adequately carrying on its function and business of collective bargaining agent for food clerks in said counties in which the local functioned, and prohibited from maintaining and establishing future standards of wages, hours and working conditions with competitors of the partnerships; that the union and its members had suffered loss and damage of good will, and hindrance and frustration in its objects and purposes of establishing better wages and working conditions for such

clerks in said counties; that these general damages to the union amounted to the sum of $100,000, and that because of the fraud and oppression practiced upon the union and its members exemplary damages in the sum of $100,000 ought to be assessed. All of the foregoing was pleaded in the first count or cause of action.

The second count realleged everything in the first save the allegations as to the specific amounts of damages suffered. Generally, on the subject of damages it was alleged that the union, and its members who had performed work for the partnerships, had been deprived of the benefits of collective bargaining and had suffered therefrom great financial loss and damage, and that each of the partnerships had, from the inception, breached its collective bargaining agreement with the union, was continuing to breach the same and would so continue unless restrained; that the conduct of the partnerships was affecting and undermining the collective bargaining status of the union, causing a loss of the benefits of collective bargaining to the members and destroying the ability of the union to bargain with persons employing union members in said counties with the result that all of the collective bargaining agreements, and the union's capacity to require the continuance of the same, had been and was being seriously impaired and weakened; that for such injuries there was no plain, speedy or adequate remedy at law.

The third to the twelfth causes of action, treated collectively, were based on allegations of assignments to plaintiff of the claims of a number of individuals who were members of the union and of the local and who were employed by the partnerships. It was alleged that these individuals had assigned to plaintiff their claims for payments withheld from them for work done, and judgment was prayed as to each for the amount withheld from each. The prayer of the complaint as to the first count was for judgment in the gross sum of $364,-430.80 and the further sum of $100,000 as exemplary damages against each and all of the defendants. As to the second cause, the prayer was for injunctive relief to restrain the alleged violations of the agreements.

Demurrers were overruled by the court, answers were filed and the cause proceeded to trial. At the close of plaintiff's evidence, motions for nonsuits were addressed to each count and were granted by the court, save as to three of the counts resting on assignment to plaintiff of claims of employees for unpaid wages. The minute entry is as follows: ''The trial

of this action was resumed this 10 o'clock A. M. with all parties present as of yesterday. Fong Shuck resumed the witness stand. . . . Plaintiffs rest. In the absence of the Jury, counsel for defendants made a motion for a nonsuit. The matter was argued to the Court by counsel for respective parties, and by the Court nonsuit was denied as to Jack Lim, Bill Hoo and Harold Hock Wong. Nonsuit was granted as to Tong Wing, Jack Mon Toy, Jerry Wong, Gene Yee, Ja You Hong, Yuen Yel Hom and Dea Suey Leang. Nonsuit was granted as to Park Grocery, Yuba Market, Linda Market and Sutter Super Market, except as to third, fifth and tenth causes of action. . . . Dated July 11th, 1955. By Order of the Court, . . ." Trial continued as to the three remaining counts, and the jury returned verdicts in favor of the defendants involved. Thereafter, there was filed a document entitled "Judgment" which reads as follows: "This action came on regularly for trial. . . . A Jury of twelve persons was regularly impaneled and sworn to try said action. . . . After hearing the evidence, the arguments of counsel, and instructions of the Court, the jury retired to consider their verdicts, and subsequently returned into court, with the verdicts signed by the foreman, and being called, answered to their names, and say: 'We, the jury in the above entitled action, find for the Park Grocery Defendants and against the Plaintiff, upon the Third cause of action.' 'We, the jury in the above entitled action, find for the Sutter Super Market Defendants and against the Plaintiff, upon the Fifth Cause of Action.' 'We, the jury in the above entitled action, find for the Sutter Super Market Defendants and against the Plaintiff, upon the Tenth Cause of Action.' Dated: July 13, 1955."

The document entitled "Judgment" and filed July 13, 1955, is not a final judgment. It did not purport to embrace a final disposition of the entire cause. By its express terms, it was confined to the three counts that had been submitted to the jury. It erroneously failed to include a recital with respect to the disposition of the other counts as to which nonsuits had been granted. Being so expressly confined to mere recitals of the jury action upon the three counts submitted to the jury and not purporting to make disposition of the counts that had been subject to nonsuit, it cannot be held to have affected those counts. (*Greenfield* v. *Mather,* 14 Cal. 2d 228, 233 [93 P.2d 100].) In *Bank of America* v. *Superior Court,* 20 Cal.2d 697, 701 [128 P.2d 357], the court stated:

". . . The law contemplates but one final judgment in a cause. As stated in the case of *Nolan* v. *Smith,* 137 Cal. 360, 361 [70 P. 166], quoting from *Stockton etc. Works* v. *Glens Falls Ins. Co.,* 98 Cal. [557] 577 [33 P. 633] : 'There can be but one final judgment in an action, and that is the one which in effect ends the suit in the court in which it was entered, and finally determines the rights of the parties in relation to the matter in controversy.' " (See also *Doudell* v. *Shoo,* 159 Cal. 448 [114 P. 579] ; *Middleton* v. *Finney,* 214 Cal. 523 [6 P.2d 938, 78 A.L.R. 1104] ; and *Potvin* v. *Pacific Greyhound Lines, Inc.,* 130 Cal.App. 510, 512 [20 P.2d 129].)

What we have said concerning the purported "Judgment" following the jury verdicts applies to the order granting nonsuit as entered in the clerk's minute book, for it, too, does not purport to be a final judgment nor did it end the suit in the court in which it was entered. As said in *Greenfield* v. *Mather, supra* :

" '. . . It is evident that the cause was attempted to be disposed of piecemeal— that a single object, although stated in several counts, was sought to be attained by the action, and that this single and unseverable object was arbitrarily attempted to be split up as the basis for two distinct judgments. It is at once apparent that no *final* judgment was entered in the action until March 14, 1935. The judgment of January 4, 1935, was not a final judgment and is not appealable under the terms of section 963 of the Code of Civil Procedure, or otherwise. Our conclusion is fully supported by the leading case of *Gunder* v. *Gunder,* 208 Cal. 559 [282 P. 794], and the many cases which follow it, . . . .' "

After citing the foregoing quotation from *Mather* v. *Mather,* 5 Cal.2d 617 [55 P.2d 1174], the court in *Greenfield* v. *Mather* continued :

"Although the above quotation refers to the judgment of March 14th as a 'final judgment,' that judgment was not under review, and the remark is pure dictum."

As before noted, the court decided that neither of the purported judgments was final and that the case remained undisposed of. ■ In *Bank of America* v. *Superior Court, supra,* where the question as to piecemeal determination of a case pleaded in several counts arose, the court said at page 701 :

"These arguments are all predicated upon a fundamental fallacy. They assume that there can be a piecemeal disposition of the several counts of a complaint. . . . That is not the law. There cannot be a separate judgment as to one count in a

complaint containing several counts. On the contrary, there can be but one judgment in an action no matter how many counts the complaint contains. [Citing cases, including *Mather* v. *Mather, supra.*]''

In the instant case the first two counts pleaded against each of the four partnerships a cause in contract seeking damages for breach and restraint from further breaches, a cause in tort based on fraudulent procurement and execution of the same contracts, and, jointly and severally against all, a cause of action in tort based upon a conspiracy to fraudulently procure through false pretense the benefits of collective bargaining agreements identical to those used in the said counties by the union and defendants' competitors with the secret intent, followed by common action, to obtain a competitive advantage to the four partnerships. Basic to every count in the complaint was the charge of breach of contract, and the gravamen of that charge was the failure to live up to the wage scale. Such a case cannot be determined in the manner here attempted. Neither the nonsuit orders nor the jury verdicts recited in the ''Judgment'' can be considered as final judgments. To do so would permit piecemeal disposition of the action, with multiple appeals, in violation of the rule of final judgment on appeal as expressed in the statute.

For the reasons given, we hold there has been no final judgment in this action. The appeal is dismissed, and the cause is remanded with directions to the trial court to proceed further by action not inconsistent herewith.

Peek, J., and Schottky, J., concurred.