23 Cal.3d 158 (1979)
588 P.2d 806
151 Cal. Rptr. 666
SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT, INC., Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and ELLIOTT WEITZMAN, Respondents.
Docket No. L.A. 30990.
Supreme Court of California.
January 18, 1979.
*160 COUNSEL
James L. Flournoy and Flournoy & Johnson for Petitioner.
Charles L. Swezey, William B. Donohoe, Dexter W. Young, Philip M. Miyamoto, Thomas J. McBirnie, Fred L. Wright and Owen A. Silverman for Respondents.
John P. McCullough, Alfred Lombardo, Howard J. Scott, Bertram Cohen, Abe Virdeh, Yale Jones, Lowell Airola, Kathe R. Moore and Frank J. Reilly as Amici Curiae on behalf of Respondents.
OPINION
MANUEL, J.
Petitioner Southern California Rapid Transit District, Inc. (RTD) seeks review of an order of the Workers' Compensation Appeals Board (WCAB) denying reconsideration of an award of temporary disability benefits to respondent Elliot Weitzman (Weitzman). The injury of concern here resulted from an automobile accident which occurred when Weitzman was returning home from the RTD district office where he delivered a medical release authorizing him to return to work after a previous industrial injury.
(1a) We conclude that the injury arose out of and in the course of employment and thus the additional disability suffered as a result of the automobile accident is compensable.
While employed as a bus driver by RTD, Weitzman suffered an industrial injury on February 29, 1976. On September 26, 1976, RTD *161 rejected a medical release for return to work presented by Weitzman because it contained restrictions unacceptable to RTD. The personnel clerk for RTD advised Weitzman that a full release was necessary and that when he obtained such a release he should bring it directly to the local district office. On September 28, 1976, Weitzman secured from the doctor a medical release which contained no restrictions, and he took it directly from the doctor's office to the district office in Van Nuys. He was told to report for work on September 30, 1976. Enroute to his home from the district office Weitzman was involved in a head-on vehicle collision in which he suffered head, chest and pelvic injuries.
On April 5, 1976, Weitzman had filed an application for adjudication of claims for the February 1976 injury. On August 18, 1977, the workers' compensation judge found the February injury to have caused temporary total disability from March 1, 1976, to and including September 29, 1976. He further found that the September 1976 injury caused additional temporary total disability from September 30, 1976, to, with exceptions not here relevant, the present and continuing. RTD's petition for reconsideration was denied by the WCAB on October 18, 1977.
RTD contends that the accident of September 28, 1976, did not arise out of or occur in the course of Weitzman's employment and hence no award for temporary disability can be predicated upon its occurrence. Of course, it is fundamental that to be compensable an employee must sustain an injury "arising out of and in the course of[his] employment." (Lab. Code, § 3600.) Specifically, section 3600[1] provides that an employee's injuries are compensable when the following conditions occur: "(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment. [¶] (c) Where the injury is proximately caused by the employment, either with or without negligence. [¶] (d) Where the injury is not caused by the intoxication of the injured employee. [¶] (e) Where the injury is not intentionally self-inflicted. [¶] (f) Where the employee has not willfully and deliberately caused his own death. [¶] (g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical agressor."
The hearing judge and the WCAB found Laines v. Workmen's Comp. Appeals Bd. (1975) 48 Cal. App.3d 872 [122 Cal. Rptr. 139] dispositive of *162 the issues raised by Weitzman's claim. In Laines, an employee driving his motorcycle to keep an appointment with a physician for treatment of injuries sustained as a result of an industrial accident was injured when hit by a truck. The determination by the WCAB that the injury did not arise out of his employment was annulled by the Court of Appeal. The court pointed out that the employer had a statutory duty to furnish, and the employee had a statutory duty to submit to, medical examination and treatment. (§§ 4600, 4050, 4053, 4056.) "If the employee elects to stay at home rather than to venture out to such a medical examination treatment, he risks losing his right to seek compensation for his industrial injury under Labor Code sections 4053 and 4056." (Id., at p. 877.) The court held that where the injury arises out of a visit to a doctor based on mutual obligations as referred to above, the injury arose out of and in the course of employment within the meaning of section 3600.[2]
RTD contends that Laines is distinguishable in that here the medical release was not delivered pursuant to any statutory obligations. In this connection, RTD claims that the release could have been turned in any time during the 28th or 29th of September. RTD concludes that since there was no prescribed time for the release to be turned in and since section 4051[3] is not involved, Laines is not controlling.
(2) We begin by noting that judicial review of decisions of the WCAB on factual matters is limited to determining whether the decision, based on the entire record, is supported by substantial evidence (§ 5952, subd. (d); LeVesque v. Workmen's Comp. App. Bd. (1970) 1 Cal.3d 627 [83 Cal. Rptr. 208, 463 P.2d 432]). (1b) The record is somewhat ambiguous as to whether Weitzman was to bring in the release the day before he actually resumed work and whether he was released by the doctor to begin work on September 28, the day of the accident, or September 30. *163 The hearing judge found September 30 as the day appointed for his return. RTD concedes that there is evidence that Weitzman was given "a full release to return to work on September 30, 1976" by the attending physician. As to the time for presentation of the release, both RTD and the hearing judge make reference to deposition testimony by Weitzman that the release had to be presented at least one day prior to his return to work. We accept this view of the record. (See Estate of Kretschmer (1964) 232 Cal. App.2d 789, 790 [43 Cal. Rptr. 121]; 6 Witkin, Cal. Procedure (2d ed.) Appeal, § 428, p. 4394.)
In his treatise on workers' compensation, Larson notes that injuries suffered in the course of a journey to the doctor's office occasioned by a compensable injury are generally held compensable, whether or not the journey is immediately after the first injury occurs and without any showing that the first injury in some way contributed to the second. "When compensation has been denied in this type of case, there has usually been some added factor weakening the causal connection, such as doubt about whether the trip was really authorized, or termination of the employment relation before the second injury occurred. Denials have also issued when the purpose of the trip was not treatment by a doctor, but examination for purposes of a workmen's compensation claim or for purposes of meeting the employer's requirement of a physical fitness certificate. Other denials in apparently related cases may be accounted for by the fact that the original injury was not work-connected, as where an employee suffers a heart attack and then attempts to connect it with the employment by pointing to the exertion of making his way to the employer's clinic or infirmary.
"In the simple case, however, of a trip to the doctor's office necessitated by a compensable injury, the arguments put forward by the Kansas court in the Taylor case are difficult to answer. The court noted that the employer is under a statutory duty to furnish medical care, and that the employee is similarly under a duty to submit to reasonable medical treatment under the act. The provisions of the act, in turn, become by implication part of the employment contract. This being so, the better view appears to be that accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected." (1 Larson, The Law of Workmen's Compensation (1978) § 13.13.)[4]
*164 While the instant case is not the "simple case" referred to by Larson, the second injury here clearly was occasioned by the earlier compensable injury and was sustained in the course of following the employer's instructions flowing out of that earlier injury. In bringing the clearance to RTD in advance of the date of his resumption of work, Weitzman was acting at his employer's behest. RTD imposed upon Weitzman the obligation to submit an unconditional release in order to return to work. The arrangement was to the mutual advantage of the parties. By returning to work Weitzman would in effect mitigate the obligation to make temporary disability benefits. RTD would receive the services in return for its expenditures. By requiring the unconditional medical release RTD received reasonable assurances that Weitzman on his return to his regular duties would be able to perform them. The arrangement on Weitzman's part meant a return to full-time employment with its attendant increase in compensation and the opportunity to become gainfully employed. Even if this arrangement did not strictly arise from the employment contract, it is sufficiently similar to the situation in Laines to compel application of the Laines rationale.
(3) We have recognized that an injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do. (Lockheed Aircraft Corp. v. Ind. Acc. Com. (1946) 28 Cal.2d 756, 760 [172 P.2d 1] [employee stopping for lunch when traveling between his employer's plants].) In Smith v. Workmen's Comp. Appeals Bd. (1968) 69 Cal.2d 814, 819-820 [73 Cal. Rptr. 253, 447 P.2d 365], we recognized the principle that "an employee `is performing service growing out of and incidental to his employment' (Lab. Code, § 3600) when he engages in conduct reasonably directed toward the fulfillment of his employer's requirements, performed for the benefit and advantage of his employer." While Smith dealt with the application of the "going and coming" rule where the employer required the employee to furnish a vehicle of transportation and the employee suffered a traffic accident while driving his car to work, the principle there stated has application here in explaining RTD's liability.
"[I]t is not surprising that the question whether claimants' subsequent conduct is an independent intervening cause in these cases cannot be fairly determined by reference to conventional causation principles alone; it too must be determined by a test which is a combination of `course' and `arising out of' elements. Since, in a strict sense, none of the *165 consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may for convenience call `quasi-course of employment.' By this expression is meant activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable [first] injury. `Reasonable' at this point relates not to the method used, but to the category of activity itself ... for example, making a trip to the doctor's office and reaching for aspirin in the medicine cabinet. The concept of quasi-course would not, however, include beating one's wife or engaging in a boxing match." (1 Larson, Workmen's Compensation Law (1978) § 13.11.)
RTD cites Anderson v. Chatham Electronics (1961) 70 N.J. Super. 202 [175 A.2d 256]. There the employee suffered an injury after returning from the doctor's office where she had gone to secure a medical release slip required by her employer before returning to work after nonwork-related surgery. The New Jersey court held that the injury did not arise out of or occur in the course of employment. We distinguish Anderson on the bases that it did not involve a second injury related to a prior industrial injury and that it does not accord with our statutory rule of liberal construction of the statutes in favor of the worker. (§ 3202.)
On denial of the petition for reconsideration, the WCAB stated: "Applying the Laines rationale to the instant case, we find that as a consequence of his February 29, 1976 industrial injury, applicant undertook a mission which entailed traveling from his physician's office to his employer's office in order to deliver a work release required by the employer in order for applicant to resume full work status. The trip occurred as a consequence of applicant's earlier industrial injury; therefore, the injury applicant sustained during that trip arose out and occurred in the course of his employment and is compensable."
(1c) We agree with the WCAB and hold that a second injury may be found compensable where as a consequence of a prior compensable injury an employee is required by his employer to present to the employer a doctor's release prior to returning to work and the employee, after going to his place of employment to present the release, is injured in *166 an automobile accident as he drives homeward. We thus conclude that the WCAB has properly applied the principle of the Laines case.
Aside from its contention that the compensable consequentials rule stated in Laines does not apply, RTD also contends that this case comes within the "going and coming" rule and is not within the "special mission" exception thereto.
(4) The going and coming rule, a judicially created rule, generally precludes compensation for injury suffered by an employee in the course of going from and coming to a fixed place of employment and generally excludes "the ordinary local commute that marks the daily transit of the mass of workers to and from their jobs." (Hinojosa v. Workmen's Comp. App. Bd. (1972) 8 Cal.3d 150, 157 [104 Cal. Rptr. 456, 501 P.2d 1176]; 1 Larson, supra, § 15.00.) Under this rule the employment relationship does not begin until the employee enters the employer's premises. (General Ins. Co. v. Workers' Comp. Appeals Bd. (1976) 16 Cal.3d 595 [128 Cal. Rptr. 417, 546 P.2d 1361].)
(5) Weitzman contends that the "special mission" exception to the going and coming rule is applicable here. In General Ins. Co. v. Workers' Comp. Appeals Bd., supra, at page 601, we stated the exception as follows: "An injury suffered by an employee during his regular commute is compensable if he was also performing a special mission for his employer. [Citation.] ... The employee's conduct is `special' if it is `extraordinary in relation to routine duties, not outside the scope of employment.'"
"Special mission" or "special errand" has been defined as "a business journey undertaken by an employee at the specific request of his employer." (2 Hanna. Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 9.03[1][e], p. 9-25.) Thus, an employee going to work early to prepare coffee for his fellow workers not at the instance of his employer was not a special mission. (General Ins. Co., supra.) However, a special trip made at a special time may be a special mission. (Schreifer v. Industrial Acc. Com. (1964) 61 Cal.2d 289 [38 Cal. Rptr. 352, 391 P.2d 832] [sheriff injured while traveling to work before required shift at the request of employer]; L.A. Jewish etc. Council v. Ind. Acc. Com. (1949) 94 Cal. App.2d 65 [209 P.2d 991] [librarian killed while driving to work early to inspect and discuss the purchase of books].) In the latter case the court stated: "... In two respects the employee was called upon *167 to deviate from the usual course of his services; .... These circumstances justify the conclusion that his trip was an extraordinary event which was necessary in the performance of a special service beyond the scope of the employment agreement. [¶] If decedent was on a `special errand' or `special mission' he was rendering services for his employer from the time he left home." (Id., at pp. 68-69.)
As discussed earlier, the circumstances of the visit to the doctor and to the RTD office were the result of RTD's request for the medical release and its delivery at least a day prior to work resumption. We cannot say that substantial evidence was lacking to sustain a finding that Weitzman was within the "special mission" exception to the "going and coming" rule. We disagree with RTD's position that the importance of the information of the physical capability of the employee to perform his job is too remote a consideration to turn the employee's compliance into a special mission. We assume that if the employer did not deem the release important, it would not have been asked for. The significance of the release is not determined by how important it may be to the employer, but by the fact that the employer has conditioned Weitzman's return to work upon its delivery.
The order denying reconsideration is affirmed.
Bird, C.J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.
NOTES
[1] All statutory references are to the Labor Code unless otherwise indicated.
[2] The Laines court relied on several out-of-state authorities, including Taylor v. Centex Construction Co. (1963) 191 Kan. 130 [379 P.2d 217], and Immer and Company v. Brosnahan (1967) 207 Va. 720 [152 S.E.2d 254], where compensation was authorized in analogous circumstances. In each case, the decision was premised on the rationale that since the liability of an employer to an employee arises out of contract, and the terms of a workers' compensation act providing for medical care and subjection to medical examination by an employer and employee respectively are embodied in that contract, "[i]t would be folly to say that the claimant's trip going to and from the doctor's office did not `arise out of' the nature, conditions, obligations, and incidents of his employment." (Taylor, supra, at p. 136.)
[3] Section 4051 provides: "The request or order for the medical examination shall fix a time and place therefor, due consideration being given to the convenience of the employee and his physical condition and ability to attend at the time and place fixed."
[4] The citation to "Taylor" is to Taylor v. Centex Construction Co., supra, 191 Kan. 130.