[Civ. No. 46807. First Dist., Div. One. Apr. 14, 1980.]

SAFEWAY STORES, INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
RICHARD E. POINTER et al., Respondents.

530

Counsel

Hanna, Brophy, MacLean, McAleer & Jensen and Michael H. Young for Petitioner.

Richard W. Younkin, William B. Donohoe, Dexter W. Young, Pisor, Vadney, George & Bennett, Elliott M. Pison and Bertram Cohen for Respondents.

OPINION

**GRODIN, J.**—Richard E. Pointer, the applicant for benefits in this case, was employed by petitioner Safeway Stores, Inc. as a data processing clerk at petitioner's plant in Fremont, California. On the night of November 2, 1975, he reported for work at his usual starting time, which was 3 p.m., but instead of leaving at his usual quitting time, which was 11:15 p.m., he remained at work until 5:30 the following morning in order to help complete a semiannual grocery inventory. There was some evidence of a computer malfunction. At 5:30 a.m. he left to go home, and as he got out of his car to enter his house he was attacked by an unknown assailant and suffered injury as a result.

Safeway, which is self-insured for purposes of the Workers' Compensation Act, declined to provide benefits or treatment under the act on the ground (among others) that the injury did not arise "out of and in the course of the employment." (Lab. Code, § 3600.) Pointer filed an application with the Workers' Compensation Appeals Board (hereinafter Board) and his application was assigned to a workers' compensation judge for hearing. (Lab. Code, § 5309.) The judge decided to hold a hearing limited to Safeway's threshold contention, deferring other issues; and after hearing the judge ruled that Pointer was entitled to no benefits under the act because his injury did not arise out of or in the course of his employment.

On Pointer's petition for rehearing, however, the Board arrived at a contrary conclusion. Finding that Pointer's injury *did* arise out of and in the course of his employment, the Board ordered that the matter be returned to the trial level for further hearing and decision on all other issues. Safeway then sought review of this decision by petition for writ of review filed with this court. We initially denied the petition, but the Supreme Court has granted it, and ordered that it be heard before this court. Lien Services of Northern California, asserting lien claims against potential compensation recovery, is also a party to this proceeding. Its position is identical with that of the applicant.

I. *Reviewability.*

Question exists at the outset whether the Board's order on reconsideration in this matter is reviewable under Labor Code section 5950, which

provides for the filing of an application for writ of review by "[a]ny person affected by an order, decision, or award of the appeals board."[1]

In *Gumilla v. Industrial Acc. Com.* (1921) 187 Cal. 638 [203 P. 397], the writ applicant sought review of an Industrial Accident Commission order granting a rehearing in a case which was originally decided in the applicant's favor, claiming that the petition for rehearing had been untimely filed. The Supreme Court denied the writ, stating: "A writ of *certiorari* does not lie to review an order made in a matter prior to the final adjudication thereof. The Industrial Accident Commission proposes to decide the case again after the order granting the rehearing, but it has not yet done so. Final action thereon has not yet been taken. Under these circumstances, the application for a writ of review of the order granting a hearing is premature. [Citations.]" (Id., at pp. 639-640.)

Relying on *Gumilla*, this and other districts of the Court of Appeal have from time to time denied as premature petitions in cases where the Board has remanded for further proceedings (e.g., *So. Cal. R. Trans. Dist.* v. *Workers' Comp. Appeals Bd.* (1976) 41 Cal.Comp.Cases 350; *Minton* v. *Workers' Comp. Appeals Bd.* (1975) 40 Cal.Comp.Cases 313; *Pacific Gas & Elec. Co.* v. *Workers' Comp. Appeals Bd.* (1978) 43 Cal.Comp.Cases 1081). This was, in fact, the basis upon which this court initially denied the instant petition. There have been cases, however, in which the appellate court has granted a petition for review despite remand. (E.g., *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1979) 44 Cal.Comp.Cases 304; *City of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1979) 44 Cal.Comp.Cases 421; *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1979) 44 Cal.Comp.Cases 539.) Notwithstanding the frequency with which this type of question must arise throughout the state, it appears that no published appellate opinion since *Gumilla* has squarely addressed it. The resultant ambiguity is particularly acute in view of the possibility that *if* a Board order determinative of a threshold issue is subject to review despite remand, failure to seek review at that time might preclude a subsequent petition on that issue. (Cf. *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1978) 82 Cal.App.3d 39 [147 Cal.Rptr. 30].)

---

[1]This question was raised by the court *sua sponte*. (Cf. *Phillips v. Phillips* (1953) 41 Cal.2d 869, 874 [264 P.2d 926].)

In order to receive and possibly to provide some guidance on this procedural question, we invited the parties to address it specifically in their briefs and oral argument. All parties *other* than the Board urge upon us the view that the petition is timely and not premature. The Board advises that its members are in disagreement on that question, and that the Board itself has no position other than that we should confront and decide it. The legal and policy arguments on both sides of the issue can be briefly summarized.

In addition to the Supreme Court's language in *Gumilla*, support for the proposition that review should await decision after remand may be found in article XIV, section 4 of the California Constitution, to the effect that the administration of the workers' compensation laws shall accomplish justice in all cases *"expeditiously*, inexpensively, and without incumbrance of any character."* (Italics added.) Allowing parties to utilize the appellate process on individual issues in a single compensation claim could create a danger of defeating that constitutional objective. Arguably employers and their carriers, with relatively superior financial position vis-à-vis the average injured worker, could take advantage of the opportunity for purposes of delay and force piecemeal litigation.

On the other hand, permitting review of Board orders which determine such threshold issues as whether the injury arises out of and in the course of employment[2] may in many cases better serve the statutory scheme and its objectives. ■ In this state, the workers' compensation system is self-executing: i.e., once an industrial injury is sustained, the employer and the carrier are obligated to afford the injured worker all compensation benefits to which he or she is entitled *without* a prior order, decision, or award by the Board; and when payment of compensation has been unreasonably delayed or refused, a penalty may be imposed. (Lab. Code, § 5814; cf. *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].) We are advised that most workers' compensation claims are never heard by the Board; the vast majority are resolved among the parties themselves. Thus, where the employer or carrier asserts in good faith and with reasonable cause that it has no statutory liability at all, and the Board has

---

[2]The parties suggest other issues which might also be characterized as "threshold" in the sense that they are basic to the establishment of the employee's rights to benefits, e.g.: the territorial jurisdiction of the Board, the existence of an employment relationship, or statute of limitations issues.

decided that issue on review after a bifurcated hearing, prompt judicial review, whatever the court decides, may avoid the necessity of further litigation. The fact that an order is reviewable does not mean that the appellate court must grant the petition for review; and if an employer files a petition without reasonable basis he will be liable for attorney fees for services of the applicant's attorney in connection therewith. (Lab. Code, § 5801.) Thus, protection exists against abuse of the appellate process in such cases.

■ Because of the self-executing character of California's workers' compensation statute, an employer confronted with an adverse determination by the Board on a threshold issue of the sort involved in this case may reasonably be said to be "affected" by the Board's order within the meaning of section 5950. Moreover, the order may reasonably be said to be "final" as that term is used in *Gumilla, supra*, 187 Cal. 638. *Gumilla's* holding that a mere grant of reconsideration is not reviewable is clearly distinguishable from the situation here.[3]

Finally, viewing the order in this case as "final" within the meaning of *Gumilla* would go far toward reconciling what would otherwise be a statutory anomaly. Section 5900, which governs the procedure for filing petitions for reconsideration, provides that such a petition may be filed by "[a]ny person aggrieved directly or indirectly by any *final* order, decision, or award made and filed by the appeals board or a referee...." (Italics added.) In *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd., supra*, 82 Cal.App.3d 39, the court held that a referee's finding that an employer had failed to prove a statute of limitations defense, leaving the amount of a lien claim to be adjusted by the parties, was a "final" order within section 5900. "Such a final order, decision, or award, in the commonly accepted sense is one which determines any

---

[3]Section 5950 was added to the Labor Code in 1951 (Stats. 1951, ch. 778, § 29). Its predecessor statute (Stats. 1917, ch. 586, § 67), in effect at the time of *Gumilla*, provided for application for "a writ of certiorari or review" within 30 days "after the application for a rehearing is denied, or, if the application is granted, within thirty days after the rendition of the decision on the rehearing." It seems rather clear as a matter of statutory interpretation that an order *granting* an application for rehearing (as in *Gumilla*) would not be subject to review prior to the "rendition of the decision on the rehearing." The court's discussion of "finality" in that case was, therefore, unnecessary to the result. The general proposition that an act must be completed in order for certiorari to lie (see *Holabird* v. *Railroad Commission* (1916) 171 Cal. 691 [154 P. 831], relied upon in *Gumilla, supra*, 187 Cal. at p. 640) serves primarily to distinguish certiorari from prohibition (see 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 27, p. 3802). Indeed, in *Gumilla* the court left open the possibility of a writ of prohibition as a means of restraining the Industrial Accident Commission from further proceedings. (187 Cal. at p. 640.)

substantial right or liability of those involved in the case. The term does not include intermediate procedural orders which merely grant a petition for reconsideration, or a petition for reopening without affirmatively disposing of any of the issues involved." (1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1977) § 7.01[4].) If an order is "final" for purposes of permitting reconsideration under section 5900, there appears to be no good reason why the Board's decision on reconsideration should not be deemed "final" under *Gumilla* for purposes of appellate review. Whether severance and preliminary determination of threshold issues will serve statutory policy in a particular case is a question which ought to be decided, in the first instance, by the Board. Viewing sections 5900 and 5950 as establishing similar tests of ripeness will permit the appellate court to accord appropriate deference to the Board's judgment.

We are persuaded by the legal and policy arguments in favor of permitting review in a case of this sort. Accordingly we determine that the matter is properly before us, and proceed to the merits.

## II. *The Merits.*

The merits of the case require examination and application of that slippery concept known as the "going and coming rule." ■ The product of judicial gloss upon the statutory conditions of liability, that rule precludes compensation for injuries suffered "during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances." (*Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176].) Justice Tobriner, writing for a unanimous court in *Hinojosa*, set forth the history of the rule and an analysis of its many exceptions in such thorough fashion as to render further general comment by us redundant. We focus, rather, upon the exception which the Board in this case found applicable—the "special mission" exception —and inquire whether the Board's finding is consistent with the evidence and applicable law.

■ "'Special mission' or 'special errand' has been defined as 'a business journey undertaken by an employee at the specific request of his employer.' (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 9.03[1][e], p. 9-25.) Thus, an employee going to work early to prepare coffee for his fellow workers not at the instance of his employer was not a special mission. (*General Ins. Co.* [v.

*Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595].) However, a special trip made at a special time may be a special mission. (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289 . . . [sheriff injured while traveling to work before required shift at the request of employer]; *L.A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65 . . . [librarian killed while driving to work early to inspect and discuss the purchase of books].)" (*Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158, 166 [151 Cal.Rptr. 666, 588 P.2d 806].) "The employee's conduct is 'special' if it is 'extraordinary in relation to routine duties, not outside the scope of employment.' (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 295 . . . .) The special mission rule 'is ordinarily held inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual.' [Citation.]" (*General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 601 [128 Cal.Rptr. 417, 546 P.2d 1361].)

In *General Ins. Co.* v. *Workers' Comp. Appeals Bd., supra,* the court held that an employee was not on a "special mission" simply because he chose to go to work 45 minutes early in order to make coffee for his fellow employees. Preparing coffee, the court observed, was "at most, part of the routine duties of the first arriving employee," and the employer "did not request or even expect" that employees would arrive early for that purpose. (16 Cal.3d at p. 601.) The court distinguished cases "where the employee goes to work early not for the purpose of performing routine duties, but for an extraordinary purpose at the special request of the employer," and cases "where the employee is required to make an extra trip to work in addition to his ordinary commute." (*Ibid.*) By contrast, the applicant's trip was "an ordinary commute for the purpose of performing an ordinary chore." (*Id.,* at p. 602.)

On the other hand, in *Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832], the court held the special mission exception applicable to a deputy sheriff who was called at home six hours ahead of his scheduled reporting time, told to report for duty as soon as possible, and injured in an automobile accident while on his way to work pursuant to that instruction. Even though his hours of work were irregular as compared to most jobs, he nevertheless had scheduled hours of duty, set a day ahead; and, the court reasoned, "[i]n reporting to work hours ahead of his regularly scheduled shift he was doing more than merely making his services available at the place where they were needed. Making the trip at that time was a special ser-

vice." (61 Cal.2d at p. 294.) While the record did not contain evidence as to what duties Schreifer would have been assigned, "[t]here must have been some special need for Schreifer's services at that time. The fact that a particular mission is encompassed within the terms of hire, even contemplated at the time employment began, is not determinative. Nearly every employment relationship contemplates that extraordinary needs may arise and must be met. 'Special' means extraordinary in relation to routine duties, not outside the scope of the employment." (61 Cal.2d at pp. 294-295.)

■ This case is much closer to *Schreifer* than to *General Ins. Co.* with respect to facts deemed relevant by the courts in those cases. Here, as in *Schreifer*, the employee's extra duty was at the employer's request and satisfied an important and out-of-the-ordinary business need.[4] The extra duty, moreover, entailed almost a doubling of the employee's normal shift duration. Indeed, in these respects Pointer's case is stronger than Schreifer's, because Pointer's assignments were more regular and the record contains evidence as to the unusual nature of the work he was called upon to perform. *Schreifer* would seem to control, therefore, unless there is some difference of legal dimension between going to work early on a special mission and coming home late.[5] Petitioner has advanced no such difference, and we find none. The journey home is obviously as foreseeable and essential a part of the special service which an employee is called upon to perform after his regular hours as is the journey to work in the case of an early special duty assignment.

[4]While performance of overtime work by an individual employee was considered voluntary, the employer's need for *someone* to work overtime in order to complete the inventory seems clear. Pointer and two other data processing clerks rotated overtime among them, and Pointer testified that he stayed late because someone had to. Overtime work was not itself unusual for that shift, and Pointer himself had worked overtime on 15 occasions during the preceding 6 months, but never for as long as the night of his injury.

[5]There seems to be no requirement, under California's view of the special mission doctrine, that the employee's journey involve added risk. (Cf. *Davis v. State Accident Insurance Fund* (1973) 15 Ore.App. 405 [515 P.2d 1333].) In this state, the special risk doctrine is framed as a separate exception to the going and coming rule. (*General Ins. Co. v. Worker's Comp. Appeals Bd., supra,* 16 Cal.3d at p. 600.) Respondents argue that Pointer's late journey involved extra risk. His wife testified that she usually waited up for him, with the lights and television on, and would meet him at the front door (from which the driveway area was visible). A sheriff testified that lights and activity were one way of dissuading crime. On the other hand, petitioner relies on the sheriff's testimony that the crime rate in Pointer's neighborhood was lowest between 4 and 8 a.m. There was, however, no testimony that the pool of potential victims at that hour was as great as at other times, raising the possibility that the per capita rate differs. We find it unnecessary to resolve this debate.

Petitioner contends that Pointer had completed his journey before he was assaulted. The Board determined that his special mission did not end until he had entered the "safety of his house." The only case cited by any party on that issue is *Charak v. Leddy* (1965) 23 App.Div.2d 437 [261 N.Y.S.2d 486], holding that the special mission exception did not apply to an employee who was injured in the locked inner lobby of her apartment. The court emphasized that she was still within the privacy and security of her home. Here, Pointer was still in a place exposed to the public when he was assaulted, and the court's reasoning in *Charak* supports recovery.

■ In view of this state's policy of liberal construction in favor of the employee, "any reasonable doubt as to the applicability of the going and coming doctrine must be resolved in the employee's favor." (*Hinojosa v. Workmen's Comp. Appeals Bd., supra,* 8 Cal.3d 150, 155-156; *Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 867 [101 Cal.Rptr. 105, 495 P.2d 433]; *Garzoli v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 502, 505 [86 Cal.Rptr. 1, 467 P.2d 833].) ■ We conclude that the Board did not err in finding that Pointer's injury arose out of and in the course of his employment.

Newsom, J., concurred.

**ELKINGTON, Acting P. J.**—I dissent.

As noted in the majority opinion, we review a tentative ruling of the Board, concluding that the worker's injury and disability were employment related and remanding the matter to the workers' compensation judge for consideration of other issues. As I view the case and as in *Gumilla v. Industrial Acc. Com.* (1921) 187 Cal. 638, 640 [203 P. 397]: "Final action thereon has not yet been taken. Under these circumstances, the application for a writ of review of the order . . . is premature."

Labor Code section 5950 permits our review of "an order, decision, or award" of the Board. Although the statute does not *expressly* say that the "order, decision, or award" must for such a review be "final," that requirement will reasonably be implied. And *Gumilla* supplies the omitted concept by holding—"A writ of *certiorari* does not lie to review an order [of the Board] made in a matter prior to the *final* adjudication thereof." (Latter italics added; 187 Cal., p. 639.)

Our review of an "order, decision, or award" of the Board is substantially, if not precisely, subject to the rule which will govern the customary appeal from a judgment. The rule is tersely stated by *Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 226 [93 Cal.Rptr. 192, 481 P.2d 200]: "[O]ur review is confined to the question of whether, *under applicable principles of law, the award [or judgment] . . . is supported by substantial evidence.*" (Italics added.) It seems a fair statement of our ordinary appellate function.

Appellate courts of this state and of other jurisdictions have long clung to the "one judgment rule," in determining a decision's reviewability. "The reason for the one judgment rule is that 'piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and . . . a review of intermediate rulings should await the final disposition of the case.'" (*Knodel v. Knodel* (1975) 14 Cal.3d 752, 760 [122 Cal.Rptr. 521, 537 P.2d 353]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 36, pp. 4050-4051; and see *Horton v. Jones* (1972) 26 Cal.App.3d 952, 956-957 [103 Cal.Rptr. 399]; *Caruso v. Snap-Tite, Inc.* (1969) 275 Cal.App.2d 211, 214 [79 Cal.Rptr. 642]; *Maier Brewing Co. v. Pacific Nat. Fire Ins. Co.* (1961) 194 Cal.App.2d 494, 497-498 [15 Cal.Rptr. 177]; *Efron v. Kalmanovitz* (1960) 185 Cal. App.2d 149, 154 [8 Cal.Rptr. 107]; *Murphy v. Fong Shuck* (1957) 151 Cal.App.2d 64, 65 [311 P.2d 80].)

The rule is ""a fundamental principle of appellate practice in the United States."" (*Gosney v. State of California* (1970) 10 Cal.App.3d 921, 928 [89 Cal.Rptr. 390]; *Brown v. Memorial Nat. Home Foundation* (1958) 158 Cal.App.2d 448, 455 [322 P.2d 600] [cert. den., 358 U.S. 943 (3 L.Ed.2d 352, 79 S.Ct. 353)].) It "permits an appeal to be taken only from a final judgment which disposes of all the issues presented in the action." (*Horton v. Jones, supra,* 26 Cal.App.3d 952, 957.)

The rule is equally, and logically, applicable as here to review by way of certiorari. In such a proceeding the nation's high court has stated: "'From the very foundation of our judicial system the object and policy of the acts of Congress in relation to appeals and writs of error, . . . have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.'" (*Baltimore Contractors v. Bodinger* (1955) 348 U.S. 176, 178 [99 L.Ed. 233, 236, 75 S.Ct. 249].)

The principle seems particularly apposite to proceedings before the Board, for the state's Constitution, article XIV, section 4, mandates that workers' compensation procedures "shall accomplish substantial justice in all cases *expeditiously, inexpensively, and without incumbrance of any character;...*" (Italics added.)

Many reasons point to the desirability of continued application of the rule to the Board's procedures. There is of course need that they be handled expeditiously and not frustrated by repetitive reviews. Workers and their counsel are entitled to a reasonable degree of procedural certainty. It is manifestly foreign to our system that there be multiple collateral appeals from one decision. Must the worker or employer promptly seek review of each tentative determination such as that before us? If our decision shall stand it would appear that he must do so, or suffer deprival of any review. For the "law of this state does not allow...a review of any decision or order from which an appeal might previously have been taken...." (*Woodman v. Ackerman* (1967) 249 Cal.App.2d 644, 648 [57 Cal.Rptr. 687]; and see authority there collected.) And, having obtained such a review, will he then be denied his statutory right to seek later review of the Board's *final* award, or part of it? And what will be his, or the employer's, or the Board's, procedural posture should the latter reconsider and desire to change its tentative determination after, and if, we shall affirm it? There are undoubtedly other and perhaps even more persuasive reasons, which do not presently come to mind.

I would, as did the court in *Gumilla*, dismiss or deny the application for review as premature.

Petitioner's application for a hearing by the Supreme Court was denied June 18, 1980. Clark, J., and Richardson, J., were of the opinion that the application should be granted.